Carolyn Hunt Cottrell (SBN 166977)
ccottrell@schneiderwallace.com
Ori Edelstein (SBN 268145)
oedelstein@schneiderwallace.com
Scott L. Gordon (SBN 319872)
sgordon@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Attorneys for Plaintiff and the Putative Class and Collective

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KUNISE LOWE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>POPCORNOPOLIS, LLC and DOES 1-100, inclusive,<br><br>Defendants. | Case No:  2:19-cv-06984-PSG-RAO<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Date: July 6, 2020<br>Time: 1:30 p.m.<br>Courtroom: 6A<br>Judge: Hon. Philip S. Gutierrez<br><br>Date Action Filed: August 12, 2019 |

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on July 6, 2020, at 1:30 p.m., in Courtroom 6A, 350 West 1st Street, 6th Floor, Los Angeles, California 90012-4565, before Hon. Philip S. Gutierrez of the United States District Court, Central District of California, Plaintiff Kunise Lowe, on behalf of herself and all others similarly situated ("Plaintiff"), moves the Court for preliminary approval of the Stipulation and Settlement Agreement (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to the accompanying Declaration of Carolyn Hunt Cottrell) as to the Settlement Class, and approval of the Settlement as to the Collective. The Settlement resolves all of the claims in this action on a class and collective basis. In particular, Plaintiff moves for orders:

***<u>As to the Settlement Class:</u>***

(1)    Granting preliminary approval of the Settlement Agreement as to the Settlement Class;

(2)    Conditionally certifying the Settlement Class for settlement purposes;

(3)    Approving the proposed schedule and procedure for completing the final approval process for the Settlement as to the Settlement Class, including setting the Final Approval Hearing;

(4)    Approving the Class Notice and the Allocation Form as they pertain to the Settlement Class (attached as **Exhibit A** and **Exhibit C**, respectively, to the Settlement Agreement);

(5)    Preliminarily appointing and approving Schneider Wallace Cottrell Konecky LLP as Counsel for the Settlement Class;

(6)    Preliminarily approving Class Counsel's request for attorneys' fees and costs;

(7)    Preliminarily appointing and approving Plaintiff Kunise Lowe and Settlement Class Member and Collective Member Rachael Stark as Class

Representatives for the Settlement Class;

(8)  Preliminarily appointing and approving JND Legal Administration ("JND") as the Settlement Administrator for the Settlement Class; and

(9)  Authorizing the Settlement Administrator to mail and email the approved Class Notice and Allocation Form to the Settlement Class as set forth in the Settlement Agreement.

***As to the Collective:***

(1)  Granting approval of the Settlement Agreement as to the Collective;

(2)  Certifying the Collective for settlement purposes;

(3)  Approving the Collective Notice, Allocation Form, and Opt-In Form as they pertain to the Collective (attached as **Exhibit B**, **Exhibit D,** and **Exhibit E** to the Settlement Agreement, respectively);

(4)  Approving the proposed schedule for completing the settlement process as to the Collective;

(5)  Approving and appointing Schneider Wallace Cottrell Konecky LLP as Counsel for the Collective for purposes of the Settlement;

(6)  Appointing and approving Plaintiff Kunise Lowe and Settlement Class Member and Collective Member Rachael Stark as Collective Representatives for the Collective for purposes of the Settlement;

(7)  Appointing and approving JND as the Settlement Administrator for the Collective; and

(8)  Authorizing the Settlement Administrator to mail and email the Collective Notice to the Collective as set forth in the Settlement Agreement.

Plaintiff bring this Motion pursuant to Federal Rules of Civil Procedure 23(e) and long-established precedent requiring Court approval for Fair Labor Standards Act settlements.[1] The Motion is based on this notice, the following Memorandum of

---

[1] *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3

1  Points and Authorities, the Declaration of Carolyn Hunt Cottrell, and all other

2  records, pleadings, and papers on file in the consolidated and related actions and such

3  other evidence or argument as may be presented to the Court at the hearing on this

4  Motion. Plaintiff also submits a Proposed Order Granting Preliminary Approval of

5  Class and Collective Action Settlement with her moving papers.

6

7  Date: May 15, 2020                    Respectfully submitted,

8

9                                        */s/ Carolyn Hunt Cottrell*

10                                       Carolyn Hunt Cottrell
                                         Ori Edelstein

11                                       Scott L. Gordon
                                         SCHNEIDER WALLACE

12                                       COTTRELL KONECKY LLP

13                                       Attorneys for Plaintiff and the Putative Class

14                                       and Collective

15

16

17

18

19

20

21

22

23

24

25

26

27

(N.D. Cal. Jan. 13, 2016);  *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015).

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

III.  PROCEDURAL HISTORY ................................................................................ 3

      A.    Plaintiff's Claims ..................................................................................... 3

      B.    Discovery ................................................................................................. 4

      C.    Mediation ................................................................................................. 5

IV.   TERMS OF THE SETTLEMENT ..................................................................... 5

      A.    Basic Terms and Value of the Settlement ............................................... 5

      B.    Class and Collective Definitions .............................................................. 8

      C.    Allocation and Awards ............................................................................ 9

      D.    Scope of Release .................................................................................... 12

      E.    Settlement Administration ...................................................................... 13

V.    ARGUMENT .................................................................................................... 13

      A.    The Court Should Grant Preliminary Approval of the Settlement as to the Settlement Class and Approval of the Settlement as to the Collective ................ 13

      B.    The Court Should Conditionally Certify the Settlement Class ................ 15

            1.    The Settlement Class Members are numerous and ascertainable. ................ 16

            2.    Plaintiff's claims raise common issues of fact or law .................................. 16

            3.    Plaintiff's claims are typical of the claims of the Class. ............................ 17

            4.    Plaintiff and Class Counsel will adequately represent the Class. ................ 18

            5.    The Rule 23(b)(3) requirements for class certification are also met. ........... 18

      C.    The Settlement Should Be Preliminarily Approved as to the Settlement Class and Approved as to the Collective Because It Is Fair, Reasonable, and Adequate. .... 20

            1.    The terms of the Settlement are fair, reasonable, and adequate ................... 21

            2.    The Parties have agreed to distribute settlement proceeds tailored to the Class and Collective and their respective claims. ........................................ 22

            3.    The Parties' informal discovery enabled them to make informed decisions regarding settlement ................................................................................. 23

            4.    Litigating the Actions not only would delay recovery, but would be expensive, time consuming, and involve substantial risk. ............................ 24

5.    The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel. ....................................................25

D.    The Class Representative Enhancement Payments are Reasonable. .................... 26

E.    The Requested Attorneys' Fees and Costs are Reasonable. ................................. 27

F.    The Proposed Notices of Settlement and Claims Process Are Reasonable .......... 30

G.    The Court Should Approve the Proposed Schedule. ............................................. 33

VI.    CONCLUSION ................................................................................................................. 35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# TABLE OF AUTHORITIES

**Federal Cases**

*Amchem Prod., Inc. v. Windsor*
   521 U.S. 591 (1997)....................................................................................................20

*Balderas v. Massage Envy Franchising, LLP*
   2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014)....................................................21

*Boyd v. Bechtel Corp.*
   485 F.Supp. 610 (N.D. Cal. 1979) ..............................................................................23

*Carter v. Anderson Merchandisers, LP*
   No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010)..........25

*Caudle v. Sprint/United Mgmt. Co.*
   No. C 17-06874 WHA, 2018 WL 6618280 (N.D. Cal. Dec. 18, 2018) .......................16

*Churchill Village, LLC. v. Gen. Elec.*
   361 F.3d 566 (9th Cir. 2004) .................................................................................21, 30

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*
   No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016)........................14

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974)....................................................................................................30

*Fry v. Hayt, Hayt & Landau*
   198 F.R.D. 461 (E.D. Pa. 2000).......................................................................16, 17, 18

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ..............................................................................passim

*Holmes v. Continental Can Co.*
   706 F.2d 1144 (11th Cir. 1983) ...........................................................................22, 23

*Hudson v. Libre Tech., Inc.*
   No. 3:18-cv-1371-GPC-KSC, 2019 U.S. Dist. LEXIS 196964 (S.D. Cal. Nov. 13, 2019).............5

*Ikonen v. Hartz Mountain Corp.*

   122 F.R.D. 258 (S.D. Cal. 1988) .................................................................................16

*In re Activision Sec. Litig.*

   723 F.Supp. 1373 (N.D. Cal. 1989) ...........................................................................28

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation*

   789 F.Supp.2d 935 (N.D. Ill. 2011) ...........................................................................23

*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*

   289 F.R.D. 526 (N.D. Cal. 2012) ...............................................................................24

*In re Mego Fin. Corp. Sec. Litig.*

   213 F.3d 454 (9th Cir. 2000) .....................................................................................21

*In re Syncor ERISA Litig.*

   516 F.3d 1095 (9th Cir. 2008) ...................................................................................21

*Jones, et al. v. CertifiedSafety, Inc.*

   Case No. 3:17-cv-02229-EMC, ECF 206, 216 (N.D. Cal. Jan. 22, 2020)......................6

*Kilbourne v. Coca-Cola Co.*

   No. 14CV984-MMA BGS, 2015 WL 5117080 (S.D. Cal. July 29, 2015)...................24

*Knight v. Red Door Salons, Inc.*

   2009 WL 248367 (N.D. Cal. 2009) ...........................................................................28

*Lamps Plus, Inc. v. Varela*

   139 S. Ct. 1407 (2019)...............................................................................................25

*Lewis v. Starbucks Corp.*

   No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) .........23

*Lynn's Food Stores, Inc. v. United States*

   679 F.2d 1350 (11th Cir. 1982) .......................................................................14, 15, 20

*Ma v. Covidien Holding, Inc.*

   2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014)..................................................21

*Monterrubio v. Best Buy Stores, L.P.*

   291 F.R.D. 443 (E.D. Cal. 2013) ...............................................................................23

*Mousai v. E-Loan, Inc.*

   No. C 06-01993 SI (N.D. Cal. May 30, 2007) ................................................................27

*Mullane v. Cent. Hanover Bank & Trust Co.*

   339 U.S. 306, 314 (1950) ..............................................................................................30

*Noyes v. Kelly Servs., Inc.*

   2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008) .....................29

*Officers for Justice v. Civil Serv. Comm'n*

   688 F.2d 615 (9th Cir. 1982) ...........................................................................20, 21, 22

*Otey v. CrowdFlower, Inc.*

   No. 12-CV-05524-JST, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015) ...............14, 15, 20

*Phillips Petroleum Co. v. Shutts*

   472 U.S. 797 (1985) ......................................................................................................30

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*

   No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) ............................28

*Romero v. Producers Dairy Foods, Inc.*

   235 F.R.D. 474 (E.D. Cal. 2006) ..................................................................................16

*See Amaraut v. Sprint/United Mgmt. Co.*

   No. 19-cv-411-WQH-MDD, 2019 U.S. Dist. LEXIS 191176 (S.D. Cal. Nov. 4, 2019) .............15

*Shaw v. AMN Healthcare, Inc.*

   326 F.R.D. 247 (N.D. Cal. 2018) ..................................................................................16

*Silber v. Mabon*

   18 F.3d 1449 (9th Cir. 1994) ........................................................................................30

*Smothers v. Northstar Alarm Servs., LLC*

   No. 2:17-cv-00548-KJM-KJN, 2019 U.S. Dist. LEXIS 10220 (E.D. Cal. Jan. 22, 2019) ..............5

*Soto, et al. v. O.C. Communications, Inc., et al.*

   Case No. 3:17-cv-00251-VC, ECF 304-305 (N.D. Cal. Oct. 23, 2019) ..............6, 26, 28

*Staton v. Boeing Co.*

   327 F.3d 938 (9th Cir. 2003) ...................................................................................26, 28

*Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015).........21

*Van Vranken v. Atl. Richfield Co.*

  901 F. Supp. 294 (N.D. Cal. 1995) ...............................................................................26

*Vasquez v. Coast Valley Roofing*

  266 F.R.D. 482 (E.D. Cal. 2010) ...................................................................................27

*Vizcaino v. Microsoft Corp.*

  290 F. 3d 1043 (9th Cir. 2002) .....................................................................................27

*Wang v. Chinese Daily News, Inc.*

  737 F.3d 538 (9th Cir. 2013) ...................................................................................16, 19

*Wren v. RGIS Inventory Specialists*

  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ...............................21, 25, 28

*Yokoyama v. Midland Nat. Life Ins. Co.*

  594 F.3d 1087 (9th Cir. 2010) ......................................................................................19

*York v. Starbucks Corp.*

  No. CV 08-07919 GAF PJWX, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011) ..........................24

**State Cases**

*Benton v. Telecom Network Specialists, Inc.*

  220 Cal.App.4th 701 (Cal. Ct. App. 2014) .......................................................................19

*Castellanos* v. *The Pepsi Bottling Group*

  No. RG07332684 (Alameda Super Ct., Mar. 11, 2010) ........................................................27

*Contreras v. Bank of America*

  No. CGC-07-467749 (San Francisco Super. Ct., Sept. 3, 2010) ..............................................27

*Hasty v. Elec. Arts, Inc.*

  No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006)......................................................27

*Meewes v. ICI Dulux Paints*

  No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003) ......................................................27

*Novak v. Retail Brand Alliance, Inc.*

  No. RG 05-223254 (Alameda Super. Ct., Sept. 22, 2009) ....................................................27

*Van Liew v. North Star Emergency Services, Inc., et al.*

No. RG17876878 (Alameda Cty. Super. Ct., Dec. 11, 2018)........................................................27

**Statutes**

29 U.S.C. § 216(b) ..............................................................................................................................5

**Rules**

Fed.R.Civ.P. 23(a) ...........................................................................................14, 15, 16, 18

Fed.R.Civ.P. 23(b) .......................................................................................15, 16, 18, 19

Fed.R.Civ.P. 23(c) .........................................................................................................30

Fed.R.Civ.P. 23(e) .................................................................................................13, 20

**Other Authorities**

Conte, Newberg on Class Actions

§ 8.21 (3rd Ed. 1992)......................................................................................................31

Conte, Newberg on Class Actions

§ 8.39 (3rd Ed. 1992)......................................................................................................30

Manual for Complex Litigation, Judicial Role in Reviewing a Proposed Class Action Settlement

§ 21.61 (4th ed. 2004)....................................................................................................14

Manual for Complex Litigation, Settlement Notice

§ 21.312 (4th ed. 2004)..................................................................................................31

Posner, Economic Analysis of the Law (4th ed. 1992)..................................................29

## I.  INTRODUCTION

This class and collective action is brought on behalf of current and former non-exempt employees ("Roadshow Workers") of Defendant Popcornopolis, LLC ("Defendant" or "Popcornopolis"), who offer samples of Defendant's products at Costco store locations. Plaintiff brings suit for Defendant's alleged violations of federal and California labor laws. After informal discovery and an early mediation, the Parties have reached a class- and collective-wide settlement, memorialized in the proposed Stipulation and Settlement Agreement (the "Settlement"). Plaintiff seeks preliminary approval of the Settlement as to the Settlement Class and approval of the Settlement as to the Collective.[2]

The Parties have resolved the claims of 308 Roadshow Workers for a total non-revisionary settlement of $500,000. The Settlement provides excellent average recoveries of approximately $1,147 per Settlement Class Member and approximately $384 per Collective Member. These recoveries are particularly robust considering that a prior class action settlement[3] resolves claims of the Settlement Class Members for a significant portion of the Class Period alleged here, and Defendant executed arbitration agreements with Plaintiff and other employees. Thus, the Parties are resolving numerous wage and hour claims unlikely to have been prosecuted as individual actions. The Settlement is fair, reasonable, and adequate in all respects, and Plaintiff respectfully requests that the Court grant the requested approvals.[4]

---

[2] The Settlement is attached as **Exhibit 1** to the accompanying Declaration of Carolyn Hunt Cottrell in Support of Plaintiff's Motion for Preliminary Approval of Class and Collective Action Settlement ("Cottrell Decl.").

[3] In *Gardner, et al. v. Popcornopolis, LLC* (Los Angeles Superior Court, Case No. BC519857) ("Gardner"), the parties settled the wage and hour claims existing for Roadshow workers at issue in this case through December 30, 2016, the date of final approval of that settlement.

[4] If the Court is inclined to decide this motion on the papers, Plaintiff would agree to proceed without a hearing.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

## II. FACTUAL BACKGROUND

Plaintiff, Settlement Class Members, and Collective Members are current and former similarly situated, hourly, non-exempt Roadshow workers for Popcornopolis in California and throughout the United States. Cottrell Decl., ¶ 8. The Class and Collective are comprised of approximately 308 individuals.[5] *Id*.

Popcornopolis is an American specialty retail popcorn company which distributes its products nationwide through chain stores, such as Costco. *Id*., ¶ 9. Popcornopolis promotes its products via in-store displays at Costco stores, where it provides free samples of its products to the shopping public. *Id*.

Plaintiff alleges that Class members experience wage and hour violations in their work for Popcornopolis. *Id*., ¶ 10. In particular, Plaintiff alleges that Popcornopolis fails to provide timely, legally complaint meal and rest breaks to the Class Members due to policies and practices requiring Roadshow Workers to remain at the promotional display the entire time that it is open. *Id*., ¶ 11. Plaintiff also alleges that Class Members experience significant amounts of off-the-clock work, including assembly, set up, disassembly, and removal of the heavy display booths. *Id*. Plaintiff alleges that Popcornopolis requires Roadshow Workers to perform additional off-the-clock work, including answering work-related calls from Popcornopolis employees outside of the scheduled shifts. *Id*. Plaintiff further alleges that California Class Members are not reimbursed for necessary business expenses for some of their mileage in their personal vehicles and work-related usage of personal cellular phones. *Id*.

As a result of these alleged violations, Plaintiff alleges that Defendant systematically violated the Fair Labor Standards Act, as well as California labor law.

---

[5] Plaintiff and members of the proposed Class and Collective are referred to hereafter as "Class Members" or "Roadshow Workers" for ease of reading.

Throughout the relevant time period, Plaintiff alleges that Defendant eschewed its obligations to Plaintiff and Class Members by (1) not paying Class Members proper minimum and overtime wages for work performed off-the-clock on a daily basis; (2) failing to provide Class Members with a reasonable opportunity to take meal and rest periods, and failing to compensate Class Members when such meal and rest periods were not taken; (3) failing to reimburse necessarily-incurred expenses; and (4) failing to issue accurate, itemized wage statements.

Popcornopolis has at all times denied, and continues to deny, all of these allegations, and denies any and all liability for Plaintiff's claims. It further denies that Plaintiff's allegations are appropriate for class, collective, and/or representative treatment for any purpose other than for settlement purposes.

## III.    PROCEDURAL HISTORY

### A.    Plaintiff's Claims

Plaintiff Kunise Lowe filed two separate complaints: an FLSA Collective and Rule 23 Class Action complaint, filed in the instant case on August 12, 2019 (*see* ECF 1), and a Complaint under the California Labor Code Private Attorneys General Act ("PAGA"), filed in Alameda County Superior Court on September 18, 2019 (Case No. HG19035567).[6] The federal Complaint alleges overtime and minimum wage claims under the FLSA on behalf of a nationwide Collective, as well as claims for Popcornopolis' violations of the California Labor Code on behalf of a Rule 23 California Class. The California Class claims include failure to compensate for all hours worked at applicable California minimum wage and overtime rate, failure to provide compliant meal and rest periods, failure to provide timely and compliant itemized wage statements, (failure to timely pay all wages owed during employment

---

[6] In the Settlement Agreement, the two cases together are referred to as the "Actions." The Parties have agreed to amend the Complaint here to bring the PAGA claims in this Court, in the interest of efficiency, so that this Court may approve the PAGA allocation in the Settlement. See Settlement Agreement, § III.

and following separation from employment, for failure to reimburse for necessary business expenditures, unfair business practices under Bus. & Prof. Code §§ 17200, *et seq*. The PAGA Complaint pleads causes of action pursuant to California Labor Code § 2699(a) and (f) for civil penalties for violating these California Labor Code provisions. Defendant filed its Answer to the Complaint in the instant action on October 18, 2019. ECF 21. Notably, Defendant asserted its Fourth Affirmative Defense that the claims at issue are subject to arbitration. *Id*.

### B. Discovery

The Parties held their Rule 26(f) conference in a series of communications between December 2, 2019, and December 16, 2019. Cottrell Decl., ¶ 12. During these conferences, the Parties discussed potential early mediation, and ultimately agreed to attend early private mediation with renowned mediator Mark S. Rudy on January 10, 2020. *Id.* The Parties apprised the Court of the mediation in their Joint Rule 26(f) Report on December 30, 2019. *See* ECF 29.

As a result of the early mediation, the Parties engaged in extensive informal discovery for the purposes of mediation. Cottrell Decl., ¶ 13. Plaintiff served an informal discovery request on December 6, 2019, which sought the Class and Collective Lists, timekeeping and payroll information, policies and procedures, arbitration agreements, the Named Plaintiff's personnel file, and numerous other documents and data. *Id.*, ¶ 14. Defendant thereafter produced considerable informal discovery, including a list of all Roadshow Workers, which included contact information, timekeeping and payroll data, the manual for Roadshow workers, policies and procedures, and various figures and data points for the Class and Collective. *Id.*, ¶ 14. Class Counsel used this information, to perform a detailed investigation of Defendant's timekeeping and payroll policies and practices, which

included numerous intake interviews with Class Members and a comprehensive damages analysis. *Id.*, ¶ 16.

### C. Mediation

The Parties participated in a full-day mediation with Mark S. Rudy on January 10, 2020. *Id.*, ¶ 17. With the assistance of Mr. Rudy, who has vast experience mediating wage and hour disputes, counsel engaged in serious and arm's-length negotiations. *Id.* The case did not settle on the date of the mediation, and negotiations continued through Mr. Rudy. These efforts culminated in the agreement to settle for $500,000 on January 17, 2020. *Id.*, ¶ 18. After the agreement to settle, counsel for the Parties worked to finalize the Settlement and corresponding notice documents, subject to the Court's approval. *Id.*, ¶ 19. Seven drafts and revisions were circulated in order to arrive at the final settlement. *Id.* The Settlement Agreement was fully executed on May 15, 2020. *Id.*, ¶ 20.

## IV. TERMS OF THE SETTLEMENT

### A. Basic Terms and Value of the Settlement

Popcornopolis has agreed to pay a non-revisionary Gross Settlement Amount of $500,000 to settle all aspects of the case. *Id.*, ¶ 21. The Net Settlement Amount is defined as the amount that is distributable to the Settlement Class and Opt-In Plaintiffs[7], and equals the Gross Settlement Amount less Class Counsel Fees ($165,000), Class Counsel Costs (currently estimated at $17,000), Enhancement Payments (an amount not to exceed $6,500 for Representative Plaintiff Kunise Lowe and an amount not to exceed $3,500 to Settlement Class Member and Collective

---

[7] In order to obtain payment under the Settlement, Collective Members are required to submit Opt-In Forms, which will be filed with the Court, in compliance with 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [FLSA collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). *See Hudson v. Libre Tech., Inc.*, No. 3:18-cv-1371-GPC-KSC, 2019 U.S. Dist. LEXIS 196964, at *23-29 (S.D. Cal. Nov. 13, 2019); *Smothers v. Northstar Alarm Servs.*, LLC, No. 2:17-cv-00548-KJM-KJN, 2019 U.S. Dist. LEXIS 10220, at *31 (E.D. Cal. Jan. 22, 2019).

Member Rachael Stark), Settlement Administration Costs (estimated at $24,000)[8], and the PAGA Settlement Amount ($20,000).[9] *Id.* The Parties agree that Settlement Payments for participating Settlement Class Members and Collective Members will be calculated and paid from the Net Settlement Amount based on the following allocations: 83% of the Net Settlement Amount is to be allocated for Settlement Payments to participating Settlement Class Members and the remaining 17% of the Net Settlement Amount is to be allocated for Settlement Payments to Collective Members.[10] *Id.*

The Gross Settlement Amount is a negotiated amount that resulted from substantial arms' length negotiations and significant investigation and analysis by Class Counsel. *Id.*, ¶ 24. Class Counsel based their damages analysis and settlement negotiations on the informal discovery, including payroll and timekeeping data. *Id.* Based on the analysis of the documents and data produced by Popcornopolis and interviews with Class Members, Plaintiff made reasonable assumptions regarding the wage and hour violation rates that she could prove on a classwide basis: 50 minutes

---

[8] The Settlement Administration costs are relatively high, due to the requirement of an opt-in process for the Collective and because the Collective Members worked in approximately 18 different states. Cottrell Decl., ¶ 22. The Settlement Administrator will be required to complete tax reporting for each separate state where Opt-In Plaintiffs worked. *Id.*

[9] The Parties agreed to allocate $20,000 of the Gross Settlement Amount to the settlement of the PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. Cottrell Decl., ¶ 23. The Settlement Administrator will pay 75%, or $15,000, of this amount to the LWDA, and 25%, or $5,000, will be distributed to Settlement Class Members. *Id.*

[10] The allocation reflects that (1) there are more Settlement Class Members than Collective Members, and (2) California state law provides for enhanced damages and penalties for wage and hour violations compared to the FLSA. In particular, there are 191 Settlement Class Members compared to 117 Collective Members. In hybrid wage and hour actions, where employees allege off-the-clock work and meal and rest period violations, the per-workweek recovery under the California Labor Code is typically weighted by a factor of three. *See Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 299 at 10:11-14, 305 (N.D. Cal. Oct. 23, 2019); *Jones, et al. v. CertifiedSafety, Inc.*, Case No. 3:17-cv-02229-EMC, ECF 206, 216 (N.D. Cal. Jan. 22, 2020). With the allocations here, the average award per Settlement Class Member (approximately $1,147) is three times that of the average award per Collective Member (approximately $384).

of off-the-clock work per each shift; an 80% meal period violation rate; a 100% rest period violation rate; $10.00 of unpaid cell phone expenses per pay period; , and $23.20 for mileage per shift. *Id.*, ¶ 25.

Using these assumptions and other datapoints derived from the timekeeping and payroll information, and further assuming that Plaintiff and the Class Members would certify all of their claims and prevail at trial, Class Counsel calculated the total potential exposure if Plaintiff prevailed on all of her claims at approximately $1.25 million.[11] *Id.*, ¶26. The total amount of damages is broken down as follows:

For the Settlement Class, Plaintiff calculated the unpaid wages damages, meal and rest period damages, and expense reimbursement damages under the California Labor Code at approximately $518,000. *Id.*, ¶ 28. For the Collective, Plaintiff calculated the unpaid wages damages and expense reimbursement damages under the FLSA at approximately $261,000. *Id.*, ¶ 29. Plaintiff's reasonable assessment for the total value of these substantive claims for the Settlement Class and Collective is approximately $779,000. *Id.*, ¶ 30.

The Settlement Class Members also have derivative claims under the California Labor Code for waiting time penalties, wage statements, and PAGA penalties. *Id.*, ¶ 31. These claims are premised on, and rise and fall with, the substantive violations. *Id.* Plaintiff's reasonable assessment for the total value of these derivative claims for the Settlement Class approximately $470,000. *Id.* Totaling these estimated

---

[11] Plaintiff's damages estimates are based on the time period from January 1, 2017 until the mediation date of January 10, 2020. Cottrell Decl., ¶ 27. For purposes of the analysis, Plaintiff made the reasonable assumption that the California Class Period is abrogated through 2016, based on the entry of the final approval order in the *Gardner* action on December 30, 2016. *Id.* The relevant limitations period for each FLSA Collective Member is three years prior to the filing of the individual's Opt-In Form (for willful violations). *See* 29 U.S.C. § 255(a). Assuming that the case did not go to early mediation and Plaintiff immediately moved forward with a successful FLSA conditional certification motion, the resulting opt-in period for Collective Members would have been in approximately late-2019 to early 2020. Therefore, the January 1, 2017 date is also a reasonable assumption for the beginning of the FLSA damages period.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

substantive and derivative damages across the Settlement Class and the Collective yields the total estimated damages amount for the entire action of approximately $1.25 million. *Id*.

The negotiated non-revisionary Gross Settlement Amount of $500,000 represents more than 64% of the approximately $779,000 that Plaintiff calculated for the core unpaid wages claims, meal and rest break claims, and expense reimbursement claims, and potential penalties. *Id.*, ¶ 32. Factoring the derivative claims, the Gross Settlement Amount is more than 40% of the total estimated damages for all claims. *Id.* Again, these figures are based on Plaintiff's assessment of a best-case-scenario. *Id.* To have obtained such a result at trial, Plaintiff would have had to (1) certify all claims and withstand any decertification motions; (2) prevail on the merits on all claims; (3) prove that Defendant acted knowingly or in bad faith; and (4) prove that all Roadshow Workers experienced the violations at the levels described above for every shift. *Id.*

Plaintiff and her counsel considered these significant risks of continued litigation when considering the proposed Settlement. *Id.*, ¶ 33. The Settlement will result in immediate and certain payment to Class members of meaningful amounts. *Id.*, ¶ 34. The average recovery is $1,147 per Settlement Class Member (this amount divides the *net* Settlement Class recovery by total number of Settlement Class Members). *Id.* The average recovery is $383 per Collective member. *Id.* These amounts provide significant compensation to the Roadshow Workers, and the Settlement provides an excellent recovery in the face of expanding and uncertain litigation. In light of all of the risks, the settlement amount is fair, reasonable, and adequate. *Id*.

## B. Class and Collective Definitions

An individual is eligible to share in the proposed Settlement if he or she belongs to any of the following:

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

The "Settlement Class" or "Settlement Class Member(s)" [12] include all current and former hourly, non-exempt employees of Popcornopolis, LLC, who worked for Popcornopolis, LLC as Roadshow Workers[13] in California during the Class Period. Settlement Agreement, ¶ I.QQ.

The "Collective" or "Collective Member(s)" include all current and former hourly, non-exempt employees of Popcornopolis, LLC, who worked for Popcornopolis, LLC as Roadshow Workers in the United States during the Collective Period, except those who worked exclusively in California. Settlement Agreement, ¶ I.K. Collective Members must timely sign and return Opt-In Forms, thereby becoming Opt-In Plaintiffs, if they wish to participate in the Settlement. Settlement Agreement, ¶ IV.F. To the extent that any Settlement Class Member additionally worked for Defendant as a Roadshow Worker outside of the State of California during the Collective Period, he or she may opt-in to the FLSA component and obtain payment under the settlement for such work by submitting an Opt-In Form.[14] *Id.*, ¶ 35.

### C. Allocation and Awards

The Net Settlement Amount to be paid to Class Members is approximately $264,000. Cottrell Decl. at ¶ 36. Settlement Class Members will each receive a settlement award check without the need to opt-in or submit a claim form. *Id.*, ¶ 37;

---

[12] The Settlement Class is to be certified for settlement purposes only under Federal Rule of Civil Procedure 23.

[13] "Roadshow Workers" are defined as non-exempt, hourly employees of Popcornopolis, LLC, including those with the job title "Brand Ambassador," Manager in any capacity, and/or Trainer, whose primary duty is to offer Defendant's product samples at displays at Costco store locations. Settlement Agreement, ¶ I.NN.

[14] If any Settlement Class Member submits an Opt-In Form, he or she will not receive any additional payment attributable to his or her work as a Roadshow Worker *in the State of California* under the settlement and will recover only from the Class Net Settlement Amount for such work. If a Settlement Class Member Opts-Out of the settlement, any Opt-In Form that he or she submits will be deemed invalid for purposes of obtaining payment under the settlement for work as a Roadshow Worker in the State of California. Settlement Agreement, § IV.F.

1  Settlement Agreement, § IV.F. Any Settlement Class Member who wishes to be

2  excluded from the settlement may submit a Request for Exclusion to the Settlement

3  Administrator during the opt-out period.[15] Settlement Agreement, ¶ IV.G.

4       Each Settlement Class Member shall be eligible to receive a *pro rata* portion of

5  the Class Net Settlement Amount based on the number of workweeks the individual

6  worked for Defendant at any time during the Class Period[16] through the Preliminary

7  Approval Date. Settlement Agreement, ¶ IV.L.2.ii. The total number of workweeks

8  for all Settlement Class Members will be added together and the resulting sum will be

9  divided into the Class Net Settlement Amount to reach a per workweek dollar figure.

10  *Id.* That figure will then be multiplied by each Settlement Class Member's number of

11  workweeks to determine the individual's *pro rata* portion of the Class Net Settlement

12  Amount. *Id.* Further, each Settlement Class Member who does not opt-out will also

13  receive an equal portion of the Net PAGA Amount. Settlement Agreement, ¶

14  IV.L.2.iv.

15       Each Collective Member shall be eligible to receive a *pro rata* portion of the

16  Collective Net Settlement Amount based on the number of workweeks the individual

17  worked for Defendant at any time during the Collective Period[17], through the

18  Preliminary Approval Date. Settlement Agreement, ¶ IV.L.2.iii. The total number of

19  workweeks for all Collective Members will be added together and the resulting sum

20  will be divided into the Collective Net Settlement Amount to reach a per workweek

21  dollar figure. *Id.* That figure will then be multiplied by each Collective Member's

22

23

---

24  [15] The opt-out deadline and objection deadline, as well as the opt-in deadline and the workweek
     dispute deadline, are all set at 75 days after dissemination of notice.

25  [16] "Class Period" means the time period from September 19, 2016 up to and including the date of

26  entry of the Preliminary Approval Order. Settlement Agreement, ¶ I.I.

27  [17] "Collective Period" means the time period from August 12, 2016 up to and including the date of
     entry of the Preliminary Approval Order. Settlement Agreement, ¶ I.M.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

number of workweeks to determine the individual's *pro rata* portion of the Collective Net Settlement Amount.[18] *Id.*

Defendant will fund three percent (3%) of the Gross Settlement Amount within ten (10) days of the Preliminary Approval Date, to provide an advance payment towards settlement administration costs. Settlement Agreement, ¶ IV.L.1. Defendant will fund the remaining 97% of the Gross Settlement Amount within three (3) days after the Effective Date. *Id.* The Settlement Administrator will make all payments due under the Settlement within seven (7) days after the Settlement Administrator receives Defendant's funding of the remaining 97% of the Gross Settlement Amount. Agreement, ¶ IV.N.

Any checks remaining uncashed after one hundred and eighty (180) calendar days after being issued shall be void. Settlement Agreement, ¶ IV.N. If the amount of uncashed individual Settlement Payment checks attributable to Settlement Class Members exceeds $10,000, then the funds from those checks will be redistributed *pro rata* to those participating Settlement Class Members who timely cash their checks. *Id.* If the amount of uncashed individual Settlement Payment checks for participating Settlement Class Members is equal to or less than $10,000, or if there are uncashed check funds after the redistribution, then the funds from those checks will be distributed to Legal Aid at Work as a *cy pres* beneficiary. *Id.* Likewise, if the amount of uncashed individual Settlement Payment checks attributable to Opt-In Plaintiffs

---

[18] The Notices of Settlement will provide the estimated recovery and number of workweeks for each Settlement Class Member and Collective Member, assuming that no Settlement Class Members opt-out and that all Collective Members timely submit Opt-In Forms. Opt-In Plaintiffs will not be paid individual Settlement Payments in excess of the amount stated in the Notices of Settlement (or the revised amount due if an Opt-In Plaintiff successfully disputes the amount of workweeks in his or her Notice of Settlement). On the other hand, Settlement Class Members may be paid individual Settlement Payments in excess of the amount stated in the Notices of Settlement. Notably, any excess funds from the Collective Net Settlement Amount attributable to Collective Members who do NOT submit Opt-In Forms will be added to the Class Net Settlement Amount and distributed to participating Settlement Class Members. Settlement Agreement, ¶ IV.L.2.i.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

exceeds $5,000, then the funds from those checks will be redistributed *pro rata* to those Opt-In Plaintiffs who timely cash their checks.[19] *Id.* If the amount of uncashed individual Settlement Payment checks for Opt-In Plaintiffs is equal to or less than $5,000, or if there are uncashed check funds after the redistribution, then the funds from those checks will be distributed to Legal Aid at Work as a *cy pres* beneficiary. *Id.* Legal Aid at Work is a nonprofit organization that provides legal services assisting low-income, working families and promotes better understanding of the conditions, policies, and institutions that affect the well-being of workers and their families and communities. *Id.*

### D. Scope of Release

Participating Settlement Class Members will release all claims that were raised in the litigation and all claims that could have been brought based on the facts alleged in the Complaints. Settlement Agreement, ¶ VI.A. In particular, on the Effective Date, all Settlement Class Members who do not submit valid and timely written Requests for Exclusion will fully release Defendant from all claims, rights, demands, liabilities and causes of action under California law and federal law that were pleaded in the litigation and/or that could have been raised based on or arising out of the same factual predicates of the litigation, running through the Preliminary Approval Date.[20] *Id.* Opt-In Plaintiffs will release all claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, that were pleaded in the litigation and/or that could have been raised based on or arising out of the same factual predicates of the litigation, running through the Preliminary Approval Date. Settlement Agreement, ¶ VI.B.

---

[19] In the event that the average pro rata redistribution to Opt-In Plaintiffs who timely cash their checks would exceed $200, then the redistribution will be adjusted so that the average payment to Opt-In Plaintiffs who timely cash their checks is $200, and the excess funds will be added to the uncashed check funds for Settlement Class Members. *Id.*

[20] This release of claims for participating Settlement Class Members extends to their redundant claims for failure to pay for all hours worked and failure to pay minimum and overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq. Id.*

Plaintiff Lowe and Settlement Class Member and Collective Member Rachael Stark also agree to a general release from all known and unknown claims they may have against the Released Parties, of every nature or description whatsoever, with the exception of any workers' compensation claim. Settlement Agreement, ¶ VI.C.

### E. Settlement Administration

The Parties have agreed to use JND Legal Administration ("JND") to administer the Settlement, for total fees and costs currently estimated at $24,000. Cottrell Decl., ¶ 50. The Settlement Administrator will distribute the Notices of Settlement via U.S. mail and email; receive and process Opt-In and Opt-Out forms; calculate the settlement payments; calculate all applicable payroll taxes, withholdings and deductions; and prepare and issue all disbursements to participating Settlement Class Members and Opt-In Plaintiffs, Enhancement Payments to Class Representatives, the LWDA Payment, payment to Class Counsel for fees and costs; and to itself for fees for administering the settlement. *Id.*, ¶ 51.

The Settlement Administrator will also create a website for the Settlement, which will allow Settlement Class Members and Collective Members to view the Class Notice (in generic form), the Opt-In Form, this Agreement, and all papers filed by Class Counsel to obtain preliminary and final approval of the Agreement. Cottrell Decl., ¶ 52; Settlement Agreement, ¶ IV.D. The Settlement Administrator will also establish a toll-free call center for telephone inquiries from Class Members. *Id*.

## V. ARGUMENT

### A. The Court Should Grant Preliminary Approval of the Settlement as to the Settlement Class and Approval of the Settlement as to the Collective

A certified class action may not be settled without Court approval. *See* Fed.R.Civ.P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2)

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

1  dissemination of notice of the settlement to all class members; and (3) a final

2  settlement approval hearing at which objecting class members may be heard, and at

3  which evidence and argument concerning the fairness, adequacy, and reasonableness

4  of the settlement is presented. Manual for Complex Litigation, *Judicial Role in*

5  *Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision

6  to approve or reject a proposed settlement is committed to the sound discretion of the

7  court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Rule 23

8  requires that all class action settlements satisfy two primary prerequisites before a

9  court may grant certification for purposes of preliminary approval: (1) that the

10  settlement class meets the requirements for class certification if it has not yet been

11  certified; and (2) that the settlement is fair, reasonable, and adequate. Fed.R.Civ.P.

12  23(a), (e)(2); *Hanlon*, 150 F.3d at 1020.

13      In the FLSA context, court approval is required for FLSA collective

14  settlements, but the Ninth Circuit has not established the criteria that a district court

15  must consider in determining whether an FLSA settlement warrants approval. *See,*

16  *e.g., Dunn v. Teachers Ins. & Annuity Ass'n of Am*., No. 13-CV-05456-HSG, 2016

17  WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey v. CrowdFlower, Inc.*, No. 12-CV-

18  05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015). Most courts in this

19  Circuit, however, first consider whether the named plaintiffs are "similarly situated"

20  to the putative class members within the meaning of 29 U.S.C. § 216(b), and then

21  evaluate the settlement under the standard established by the Eleventh Circuit in

22  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982),

23  which requires the settlement to constitute "a fair and reasonable resolution of a bona

24  fide dispute over FLSA provisions." *Otey*, 2015 WL 6091741, at *4. "If a settlement

25  in an employee FLSA suit does reflect a reasonable compromise over issues...that are

26  actually in dispute," the district court may "approve the settlement in order to

27

1    promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679
2    F.2d at 1354; *Otey*, 2015 WL 6091741, at *4.
3        This class action settlement satisfies the requirements of Rule 23(a) and (b),
4    and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). Cottrell
5    Decl., ¶ 53. Moreover, the Collective Members are similarly situated for FLSA
6    purposes, and the proposed Settlement provides an excellent recovery to the
7    Collective Members in a reasonable compromise. *Id.*  Accordingly, the Court should
8    preliminarily approve the Settlement as to the Settlement Class and approve the
9    Settlement as to the Collective.[21] *Id.*

10       **B. The Court Should Conditionally Certify the Settlement Class[22]**

11       A class may be certified under Rule 23 if (1) the class is so numerous that
12   joinder of all members individually is "impracticable"; (2) questions of law or fact
13   are common to the class; (3) the claims or defenses of the class representative are
14   typical of the claims or defenses of the class; and (4) the person representing the class
15   is able to fairly and adequately protect the interests of all members of the class.
16   Fed.R.Civ.P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action seeking
17   monetary relief may only be maintained if "the court finds that the questions of law
18   or fact common to class members predominate over any questions affecting only
19   individual members, and that a class action is superior to other available methods for
20   fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Applying
21   this standard, numerous cases similar to this case have certified classes of employees
22

23   [21] Plaintiff acknowledges that, in the event that the Settlement is not approved by the Court, class
24   and collective certification would be contested by Defendant, and Defendant fully reserves and does
     not waive any arguments and challenges regarding the propriety of class and collective action
25   certification.
     [22] For the reasons set forth here, the Court should also certify the Collective. *See Amaraut v.*
26   *Sprint/United Mgmt. Co.*, No. 19-cv-411-WQH-MDD, 2019 U.S. Dist. LEXIS 191176, at *3 (S.D.
     Cal. Nov. 4, 2019) ("to certify a putative collective action under § 216(b), employees bringing the
27   action must demonstrate they are similarly situated to the proposed class members").

who have suffered wage and hour violations under California wage and hour laws.[23]

Likewise, Plaintiff contends that the Settlement Class meets all of these requirements.

### 1. The Settlement Class Members are numerous and ascertainable.

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed.R.Civ.P. 23(a)(1). While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). Plaintiff contends that the approximately 191 Settlement Class Members render the class so large as to make joinder impracticable. Cottrell Decl., ¶ 54. The Class Members may be readily identified from Popcornopolis' payroll records. *Id.*

### 2. Plaintiff's claims raise common issues of fact or law.

The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Rule 23(a)(2) has been construed permissively. *Hanlon*, 150 F.3d at 1019. Plaintiff "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id.*

Plaintiff contends that common questions of law and fact predominate here, satisfying paragraphs (a)(2) and (b)(3) of Rule 23, as alleged in the operative complaint. Cottrell Decl., ¶ 55. Defendant has uniform policies applicable to all

---

[23] *See, e.g., Caudle v. Sprint/United Mgmt. Co.,* No. C 17-06874 WHA, 2018 WL 6618280, at *7 (N.D. Cal. Dec. 18, 2018) (certifying California Rule 23 class in a case asserting policy-driven wage violations); *Shaw v. AMN Healthcare, Inc.*, 326 F.R.D. 247, 275 (N.D. Cal. 2018) (certifying California Rule 23 class in a case asserting policy-driven off-the-clock, overtime, and meal and rest break violations, in joint employment context).

Roadshow Workers. *Id.*, ¶ 56. Specifically, Plaintiff alleges that Roadshow Workers all perform essentially the same job duties— assembling and arranging the displays, interacting with members of the public, distributing free samples to shoppers, promoting Popcornopolis' products, and dismantling the display, pursuant to Defendant's standards and requirements. *Id.* Plaintiff alleges that the wage and hour violations are borne of the standardized policies, practices, and procedures that Popcornopolis imposes, creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. *Id.* In particular, Roadshow Workers are subject to the same: hiring and training process; timekeeping, payroll, and compensation policies; meal and rest period policies and practices; and reimbursement policies. *Id.* Plaintiff's other derivative claims will rise or fall with the primary claims. *Id.* Because these questions can be resolved at the same juncture, Plaintiff contends the commonality requirement is satisfied for the Settlement Class. *Id.*

The same is true with regard to the Collective, which holds approximately 117 members. *Id.*, ¶ 57. Moreover, although Plaintiff has not moved to conditionally certify the Collective, for the purposes of settlement of the Action, Defendant consents to the conditional certification of the Settlement Class Members' and of the Collective Members' claims under the FLSA. *Id.*; Settlement Agreement, ¶ IV.B. Because Defendant maintains various common policies and practices as to what work they compensate and what work they do not compensate, and applies these policies and practices to the Roadshow Workers, Plaintiff contends that there are no individual defenses available to Defendant. Cottrell Decl., ¶ 58.

### 3. Plaintiff's claims are typical of the claims of the Class.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, a representative's claims are 'typical' if they are reasonably

coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiff contend that her claims are typical of those of all other Class Members. Cottrell Decl., ¶ 59. She was subject to the alleged illegal policies and practices that form the basis of the claims asserted in this case. *Id.* Interviews with Class Members and review of timekeeping and payroll data confirm that the employees throughout the United States were subjected to the same alleged illegal policies and practices to which Plaintiff was subjected. *Id.*, ¶ 60. Thus, Plaintiff contends that the typicality requirement is also satisfied. *Id.*

### 4. Plaintiff and Class Counsel will adequately represent the Class.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiff's claims are in line with the claims of the Settlement Class, and Plaintiff's claims are not antagonistic to the claims of Class Members. Cottrell Decl., ¶ 61. Plaintiff has prosecuted this case with the interests of the Class Members in mind. *Id.* Moreover, Class Counsel has extensive experience in class action and employment litigation, including wage and hour class actions, and do not have any conflict with the Class. *Id.,* ¶¶ 5-7, 62.

### 5. The Rule 23(b)(3) requirements for class certification are also met.

Under Rule 23(b)(3), Plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests

1   whether proposed classes are sufficiently cohesive to warrant adjudication by

2   representation.'" *Wang,* 737 F.3d at 545.

3   Here, Plaintiff contends the common questions raised in this action

4   predominate over any individualized questions concerning the Settlement Class.

5   Cottrell Decl., ¶ 63. The Settlement Class is entirely cohesive because resolution of

6   Plaintiff's claims hinge on the uniform policies and practices of Defendant, rather

7   than the treatment the Class Members experienced on an individual level. *Id.* As a

8   result, Plaintiff contends that the resolution of these alleged class claims would be

9   achieved through the use of common forms of proof, such as Defendant's uniform

10  policies, and would not require inquiries specific to individual Class Members.[24] *Id.*

11  Further, Plaintiff contends the class action mechanism is a superior method of

12  adjudication compared to a multitude of individual suits. *Id.*, ¶ 64. To determine

13  whether the class approach is superior, courts are to consider: (A) the class members'

14  interests in individually controlling the prosecution or defense of separate actions;

15  (B) the extent and nature of any litigation concerning the controversy already begun

16  by or against class members; (C) the desirability or undesirability of concentrating

17  the litigation of the claims in the particular forum; and (D) the likely difficulties in

18  managing a class action. Fed.R.Civ.P. 23(b)(3)(A)-(D).

19  Here, the Class Members do not have a strong interest in controlling their

20  individual claims. Cottrell Decl., ¶ 65. The action involves several workers with very

21  similar, but relatively small, claims for monetary injury. *Id.* If the Class Members

22  proceeded on their claims as individuals, their many individual suits would require

23

24  [24] Although the amount of time worked off-the-clock and number of missed meal and rest periods

25  may vary, these are damages questions and should not impact class certification. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). The fact that individual inquiry

26  might be necessary to determine whether individual employees were able to take breaks despite the Defendant's allegedly unlawful policy is not a proper basis for denying certification. *Benton v.*

27  *Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701 (Cal. Ct. App. 2014).

1  duplicative discovery and duplicative litigation, and each Class Member would have
2  to personally participate in the litigation effort to an extent that would never be
3  required in a class proceeding. *Id.* Thus, Plaintiff contends that the class action
4  mechanism would efficiently resolve numerous substantially identical claims at the
5  same time while avoiding a waste of judicial resources and eliminating the possibility
6  of conflicting decisions from repetitious litigation and arbitrations. *Id.*

7      The issues raised by the present case are much better handled collectively by
8  way of a settlement. *Id.*, ¶ 66. Manageability is not a concern in the settlement
9  context. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement
10 presented by the Parties provides finality, ensures that workers receive redress for
11 their relatively modest claims, and avoids clogging the legal system with numerous
12 cases. Cottrell Decl., ¶ 67.  Accordingly, class treatment is efficient and warranted,
13 and the Court should conditionally certify the Settlement Class for settlement
14 purposes. *Id.*

15     **C. The Settlement Should Be Preliminarily Approved as to the**
16     **Settlement Class and Approved as to the Collective Because It Is**
       **Fair, Reasonable, and Adequate.**

17     In deciding whether to approve a proposed class or collective settlement, the
18 Court must find that the proposed settlement is "fair, reasonable, and adequate."
19 Fed.R.Civ.P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625
20 (9th Cir. 1982); *Lynn's Food Stores*, 679 F.2d at 1354-55; *Otey*, 2015 WL 6091741,
21 at *4. Included in this analysis are considerations of: (1) the strength of the plaintiff's
22 case; (2) the risk, expense, complexity, and likely duration of further litigation; (3)
23 the risk of maintaining class action status throughout the trial; (4) the amount offered
24 in settlement; (5) the extent of discovery completed and the stage of the proceedings;
25 (6) the experience and views of counsel; (7) the presence of a governmental
26 participant; and (8) the reaction of the class members to the proposed settlement.
27

*Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and adequate.

### 1. The terms of the Settlement are fair, reasonable, and adequate.

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice,* 688 F.2d at 623; *Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving wage and hour settlement which represented 8.1% of the total verdict value).[25] A review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms. Cottrell Decl., ¶ 68. The Gross Settlement Amount of $500,000, represents more than 40% of the approximate $1.25 million that Plaintiff calculated for the unpaid wages claims, meal and rest break violations, derivative claims, and potential penalties that would have been owed to all Class and Collective

---

[25] *See also Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Balderas v. Massage Envy Franchising, LLP*, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (gross settlement amount of 8% of maximum recovery and net settlement amount of 5%); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

1    Members. *Id*. Again, these figures are based on Plaintiff's assessment of a best-case-

2    scenario. *Id.* ¶ 69. To have obtained such a result at trial(s), Plaintiff would have had

3    to prove that each Class Member worked off-the-clock for 50 minutes in each

4    workday, endured pervasive meal and rest break violations and unreimbursed

5    expenses at the rates set forth above, and that Defendant acted knowingly or in bad

6    faith. *Id.* These figures would of course be disputed and hotly contested. *Id*. The

7    result is well within the reasonable standard when considering the difficulty and risks

8    presented by pursuing further litigation. *Id.* The final settlement amount takes into

9    account the substantial risks inherent in any class action wage and hour case, as well

10    as the procedural posture of the Actions and the specific defenses asserted by

11    Defendant, many of which are unique to this case. *Id*., ¶ 70*; see Officers for Justice*,

12    688 F.2d at 623.

13
                    **2.    The Parties have agreed to distribute settlement proceeds
                    tailored to the Class and Collective and their respective
14                            claims.**

15        In an effort to ensure fairness, the Parties have agreed to allocate the settlement

16    proceeds amongst Settlement Class Members and Opt-In Plaintiffs in a manner that

17    recognizes that amount of time that the particular individual worked for Defendant in

18    the applicable limitations period. Cottrell Decl., ¶ 71. The allocation method will

19    ensure that longer-tenured Settlement Class Members and Opt-In Plaintiffs receive a

20    greater recovery than their less-tenured counterparts. *Id.* Moreover, the allocation

21    tracks the differences in substantive law and penalty claims with a heavier allocation

22    for work performed in California. *Id.* The allocation was made based on Class

23    Counsel's assessment to ensure that employees are compensated accordingly and in

24    the most equitable manner. *Id*.

25        A class action settlement need not benefit all class members equally. *Holmes v.*

26    *Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *In re AT & T Mobility*

27    *Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL

2204584 at *42 (N.D. Ill. 2011). Rather, although disparities in the treatment of class and collective members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d at 979–80, 2011 WL 2204584 at *42. Plaintiff provides rational and legitimate bases for the allocation method here, and the Parties submit that it should be approved by the Court.

### 3. The Parties' informal discovery enabled them to make informed decisions regarding settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in extensive informal discovery that has enabled both sides to assess the claims and potential defenses in this action. Cottrell Decl., ¶¶12-16, 72. The Parties were able to accurately assess the legal and factual issues that would arise if the cases proceeded to trial(s). *Id*. In addition, in reaching this Settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class and collective actions. *Id*., ¶¶ 5-7, 73. Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendant's compensation policies and practices on Class Members' pay. *Id*., ¶ 74. Ultimately, facilitated by mediator Mark S. Rudy, the Parties used this information and discovery to fairly resolve the litigation. *Id*., ¶ 75.

### 4. Litigating the Actions not only would delay recovery, but would be expensive, time consuming, and involve substantial risk.

The monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation. Cottrell Decl., ¶ 76. If the Actions were to go to trial as class and collective actions, Class Counsel estimates that fees and costs would exceed $2,000,000. *Id.*, ¶ 77. Litigating the class and collective action claims would require substantial additional preparation and discovery. *Id.* It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. *Id.*

Recovery of the damages and penalties previously referenced would also require complete success and certification of all of Plaintiff's claims, a questionable feat in light of developments in wage and hour and class and collective action law as well as the legal and factual grounds that Defendant has asserted to defend this action. *Id.,* ¶ 78. Off-the-clock claims may pose difficulty to certify for class treatment, given that the nature, cause, and amount of the off-the-clock work may vary based on the individualized circumstances of the worker.[26] While Plaintiff is confident that she would establish that common policies and practices give rise to the off-the-clock work for Roadshow Workers, Plaintiff acknowledges that the work was performed at various different locations around the country. Cottrell Decl., ¶ 79. Moreover, Defendant executed arbitration agreements with Plaintiff Lowe and the Class Members, which, if upheld, would prevent certification of claims in this

---

[26] *See, e.g., In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), aff'd, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019); *Kilbourne v. Coca-Cola Co.*, No. 14CV984-MMA BGS, 2015 WL 5117080, at *14 (S.D. Cal. July 29, 2015); *York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011).

action.[27] *Id.*, ¶ 80. With the arbitration agreement, the Roadshow Workers would effectively be limited to individual actions in the arbitral forum. *Id.*

Thus, Plaintiff faces the risk that the Court would decline to certify the Settlement Class and/or Collective for at least some claims. *Id.*, at ¶ 81. Certification of off-the-clock work claims is complicated by the lack of documentary evidence and reliance on employee testimony, and Plaintiff would likely face motions for decertification as the case progressed. *Id.*

In contrast to litigating this suit, resolving this case by means of the Settlement will yield a prompt, certain, and very substantial recovery for the Class Members. *Id.*, at ¶ 82. Such a result will benefit the Parties and the court system. *Id.* It will bring finality to the Actions and will foreclose the possibility of expanding litigation. *Id.*

### 5. The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel.

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the settlement was a product of non-collusive, arm's-length negotiations. Cottrell Decl., ¶ 83. The Parties participated in a lengthy mediation session before Mark S. Rudy, a skilled mediator with many years of experience mediating

---

[27] *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019).

1  employment matters. *Id.* The Parties then spent several weeks discussing settlement
2  and negotiating the settlement agreement, with several rounds of meet and confer and
3  correspondences related to the terms and details of the Settlement. *Id.*, ¶ 84. Plaintiff
4  is represented by experienced and respected litigators of representative wage and
5  hour actions, and these attorneys feel strongly that the proposed Settlement achieves
6  an excellent result for the Class Members. *Id.*, ¶ 85.

7            **D. The Class Representative Enhancement Payments are Reasonable.**

8            Named plaintiffs in class action litigation are eligible for reasonable service
9  awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).[28]  The
10 enhancement payments of up to $6,500 for Plaintiff and up to $3,500 for Settlement
11 Class Member and Collective Member Rachael Stark are intended to compensate
12 them for the critical role they played in this case, and the time, effort, and risks
13 undertaken in helping secure the result obtained on behalf of the Class Members.[29]
14 Cottrell Decl., ¶ 86. In agreeing to serve as Class and Collective representatives,
15 these individuals formally agreed to accept the responsibilities of representing the
16 interests of all Class Members. *Id.,* ¶ 88. Defendant does not oppose the requested
17 payments to these representatives as reasonable service awards. *Id.,* ¶ 89.

18           Moreover, the enhancement payments are fair when compared to the payments
19 approved in similar cases. *See, e.g.*, *Soto, et al. v. O.C. Communications, Inc., et al.*,
20 Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving $15,000
21 and $10,000 service awards in recent hybrid FLSA/Rule 23 settlement); *Guilbaud v.*

22 ─────────────────
23 [28] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken v.*
24 *Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action).
25 [29] Class Representative Rachael Stark, though not a Named Plaintiff, has assisted extensively with the prosecution of this action and has been involved in the litigation at every stage. Cottrell Decl., ¶
26 87. Moreover, Plaintiff Kunise Lowe and Settlement Class Member and Collective Member Rachael Stark have agreed to a general release, unlike other Class Members. *See* Settlement
27 Agreement, ¶ VI.C.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

*Sprint/United Management Co., Inc.,* No. 3:13-cv-04357-VC, Dkt. No. 181 (N.D. Cal. Apr. 15, 2016) (approving $10,000 service payments for each class representative in FLSA and California state law representative wage and hour action); *Van Liew v. North Star Emergency Services, Inc., et al.*, No. RG17876878 (Alameda Cty. Super. Ct., Dec. 11, 2018) (approving $15,000 and $10,000 service awards, respectively, to class representatives in California Labor Code wage and hour class action).[30]

### E. The Requested Attorneys' Fees and Costs are Reasonable.

In their fee motion to be submitted with the final approval papers, Class counsel will request 33% of the Gross Settlement Amount, or $165,000, plus reimbursement of costs up to $17,000. Cottrell Decl., ¶ 90. Class Counsel's lodestar is currently estimated at $180,000, and thus exceeds the requested fee award.[31] *Id.,* ¶ 91. On this basis, the requested attorneys' fees award is reasonable. *Id.*; *see, e.g., Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1050-51 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award").

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. Cottrell Decl., ¶92; *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Hanlon*, 150

---

[30] *See also Contreras v. Bank of America*, No. CGC-07-467749 (San Francisco Super. Ct., Sept. 3, 2010) (approving $10,000 service payment for each class representative); *Castellanos* v. *The Pepsi Bottling Group*, No. RG07332684 (Alameda Super Ct., Mar. 11, 2010) (approving award of $12,500); *Novak v. Retail Brand Alliance, Inc.*, No. RG 05-223254 (Alameda Super. Ct., Sept. 22, 2009) (approving award of $12,500); *Hasty v. Elec. Arts, Inc.*, No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006) (approving award of $30,000); *Meewes v. ICI Dulux Paints*, No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003) (approving service awards of $50,000, $25,000 and $10,000 to the named plaintiffs); *Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) (approving service award of $20,000).

[31] Class Counsel will provide detailed lodestar information for SWCK with their fee motion.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

F.3d at 1029; *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Id.* (citing *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")). In California, federal and state courts have customarily approved payments of attorneys' fees amounting to one-third of the common fund in comparable wage and hour class actions. *See, e.g., Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund); *Wren,* 2011 WL 1230826 (approving attorneys' fee award of just under 42% of common fund).

In this case, given the excellent results achieved and the effort expended litigating the Actions, such an upward adjustment is warranted. Cottrell Decl., ¶ 93. There was no guarantee of compensation or reimbursement. *Id.* Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis. *Id.* These risks were front and center. *Id.* Defendant's vigorous and skillful defense further confronted Class Counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id.*

Nevertheless, Plaintiff and Class counsel committed themselves to developing and pressing Plaintiff's legal claims to enforce the employees' rights and maximize the class and collective recovery. *Id., ¶* 94. During the litigation, counsel had to turn away other less risky cases to remain sufficiently resourced for this one. *Id.* The challenges that Class Counsel had to confront and the risks they had to fully absorb

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

1   on behalf of the class and collective here are precisely the reasons for multipliers in
2   contingency fee cases. *See, e.g.*, *Noyes v. Kelly Servs., Inc.,* 2:02-CV-2685-GEB-
3   CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic Analysis of
4   the Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the
5   same legal services paid as they are performed… because the risk of default (the loss
6   of the case, which cancels the debt of the client to the lawyer) is much higher than
7   that of conventional loans").

8        Attorneys who litigate on a wholly or partially contingent basis expect to
9   receive significantly higher effective hourly rates in cases where compensation is
10  contingent on success, particularly in hard-fought cases where, like in the case at bar,
11  the result is uncertain. Cottrell Decl., ¶ 95. This does not result in any windfall or
12  undue bonus. *Id.* In the legal marketplace, a lawyer who assumes a significant
13  financial risk on behalf of a client rightfully expects that his or her compensation will
14  be significantly greater than if no risk was involved (*i.e.,* if the client paid the bill on
15  a monthly basis), and that the greater the risk, the greater the "enhancement." *Id.*
16  Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of
17  recovering no compensation whatsoever for hundreds of hours of labor simply makes
18  those fee awards consistent with the legal marketplace, and in so doing, helps to
19  ensure that meritorious cases will be brought to enforce important public interest
20  policies and that clients who have meritorious claims will be better able to obtain
21  qualified counsel. *Id.*

22       For these reasons, Class counsel respectfully submits that a 33% recovery for
23  fees is appropriate. *Id.,* ¶ 96. Class Counsel also requests reimbursement for their
24  litigation costs. *Id.*, ¶ 97. Class Counsel's efforts resulted in an excellent settlement,
25  and the fee and costs award should be preliminarily approved as fair and reasonable.
26  *Id.*, ¶ 98.

27

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

### F. The Proposed Notices of Settlement and Claims Process Are Reasonable

The Court must ensure that Class Members receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village LLC*, 361 F.3d at 575.

The Notices of Settlement, attached as **Exhibit A** and **Exhibit B** to the Settlement Agreement, and the Allocation Forms, attached as **Exhibit C** and **Exhibit D** to the Settlement Agreement, are "the best notice practicable." Cottrell Decl., ¶ 99; Fed.R.Civ.P. 23(c)(2)(B). All Class Members have been identified and the Notice of Settlement will be mailed directly to each Class Member, and emailed to those for whom Popcornopolis has an email address. Cottrell Decl., ¶ 100. The proposed Notices are clear and straightforward, and provide information on the nature of the action and the proposed Class and Collective, the terms and provisions of the Settlement Agreement, and the monetary awards that the Settlement will provide Class Members. *Id.* In addition, the Parties will provide a settlement website that provides a generic form of the Notices, the Settlement Agreement, and other case related documents and contact information. *Id.*, ¶ 101.

The proposed Notices fulfill the requirement of neutrality in class notices. *Id.*, ¶ 102. *See* Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992). They summarize

the proceedings necessary to provide context for the Settlement Agreement and summarizes the terms and conditions of the Settlement, including an explanation of how the settlement amount will be allocated between the Named Plaintiff, Class Counsel, the Settlement Administrator, and the Class Members, in an informative, coherent and easy-to-understand manner, all in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate description of the terms of the settlement." Cottrell Decl., ¶ 102; Manual for Complex Litigation, Settlement Notice, § 21.312 (4th ed. 2004).

The Notices of Settlement clearly explain the procedures and deadlines for requesting exclusion from the Settlement, objecting to the Settlement, opting-in to the Settlement, the consequences of taking or foregoing the various options available to Class Members, and the date, time and place of the Final Approval Hearing. Cottrell Decl., ¶ 103. Pursuant to Rule 23(h), the proposed Notices of Settlement also set forth the amount of attorneys' fees and costs sought by Plaintiff, as well as an explanation of the procedure by which Class Counsel will apply for them. *Id.* The Notices of Settlement clearly state that the Settlement does not constitute an admission of liability by Defendant. *Id.*, ¶ 104. Accordingly, the Notices of Settlement comply with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See* Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex Litigation, Certification Notice, § 21.311; Settlement Notice, § 21.312 (4th ed. 2004).

Furthermore, reasonable steps will be taken to ensure that all Class Members receive the Notice. Cottrell Decl., ¶ 105. Before mailing, Popcornopolis will provide to the Settlement Administrator an electronic database containing the following information for each Settlement Class Member and Collective Member: name, social security number; job title, dates of employment, total hours worked, by state, during

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

1 the Class and Collective Periods, last known address, last known personal email

2 address, and last known telephone number. *Id.* The Notices of Settlement will be sent

3 by United States Mail, and also via email to the maximum extent possible. Before

4 mailing the Notice of Settlement, the Settlement Administrator shall perform a search

5 based on the National Change of Address Database information to update and correct

6 for any known or identifiable mailing address changes. *Id.* Within 14 days of receipt

7 of the electronic database from Popcornopolis, the Settlement Administrator will mail

8 the Notice of Settlement to each Class Member. *Id.*

9      With respect to Notices returned as undelivered, the Settlement Administrator

10 will re-mail any Notices returned to the Settlement Administrator with a forwarding

11 address following receipt of the returned mail. *Id.,* ¶ 106. If any Notice is returned to

12 the Settlement Administrator without a forwarding address, the Settlement

13 Administrator will undertake reasonable efforts to search for the correct address,

14 including skip tracing, and will promptly re-mail the Notice of Settlement to any

15 newly found address. *Id*.

16      Settlement Class Members will have seventy-five (75) days from the mailing

17 of the Notices of Settlement to opt-out or object to the Settlement, and Collective

18 Members will have seventy-five (75) days to opt-in to the Settlement. *Id.*, ¶ 107. Any

19 Settlement Class Member who does not submit a timely request to exclude

20 themselves from the Settlement, and any Collective Member who timely opts-in to

21 the Settlement, will be deemed a Participating Individual whose rights and claims are

22 determined by any order the Court enters granting final approval, and any judgment

23 the Court ultimately enters in the case. *Id.* Administration of the Settlement will

24 follow upon the occurrence of the Effective Date of the Settlement. *Id.,* ¶ 108. Within

25 fifteen (15) business days following the close of the opt-out period, the Settlement

26 Administrator will provide Class Counsel and Counsel for Defendant with a

27

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

declaration attesting to completion of the notice process, including an explanation of efforts to resend undelivered Class Notices, and a summary of Opt-Outs, Opt-Ins and/or objections received. *Id.,* ¶ 109.

Because the proposed Notices of Settlement clearly and concisely describe the terms of the Settlement and the awards and obligations for Class Members who participate, and because the Notices will be disseminated in a way calculated to provide notice to as many Class Members as possible, the Notices of Settlement should be preliminarily approved. *Id.,* ¶ 110.

**G. The Court Should Approve the Proposed Schedule.**

The Settlement Agreement contains the following proposed schedule, which Plaintiff respectfully requests this Court approve:

| | |
|---|---|
| Date of preliminary approval of the Settlement as to Settlement Class and approval of the Settlement as to the Collective | |
| Deadline for Popcornopolis to fund 3% of the Gross Settlement Amount | Within 10 days of the Court's Preliminary Approval Order |
| Deadline for Popcornopolis to provide JND with the electronic database of Class and Collective information | Within 14 days of the Court's Preliminary Approval Order |
| Deadline for Popcornopolis to provide to Class Counsel a list with the names of Settlement Class Members and Collective Members and, for each person, the total hours worked, by state, during the Class and Collective Periods, as applicable | Within 14 business days of the Court's Preliminary Approval Order |
| Deadline for JND to mail and email the Class Notice to Settlement Class Members and the Collective Notice (with the Opt-In Form) to the Collective Members | Within 14 days after JND receives the electronic database |
| Deadline for Settlement Class Members and Collective Members to submit the | Within 75 days after the original date of mailing of the Notice of Settlement |

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

| | |
|---|---|
| signed Allocation Form challenging or correcting the number of workweeks worked | |
| Deadline for Settlement Class Members to postmark request to opt-out or file objections to the Settlement | Within 75 days after the original date of mailing of the Class Notice |
| Deadline for Collective Members to opt-in to the settlement by submitting the Opt-In Form, thereby becoming Opt-In Plaintiffs | Within 75 days after the original date of mailing of the Collective Notice |
| Deadline for JND to provide Class Counsel and Counsel for Defendant with a declaration attesting to completion of the notice process | Within 15 days following the close of the Opt-Out Period |
| Deadline for filing of Final Approval Motion | According to Local Rule |
| Final Approval Hearing | |
| Effective Date | The first date after a Final Order and Judgment is entered granting approval to the terms of this Agreement without modification of any terms, with the exceptions set forth below in Section V.B of the Settlement, and either of the following events also has occurred: (a) the date upon which the time to appeal the Final Order and Judgment expires with no appeal having been filed; or (b) the date upon which any such appeal of the Final Order and Judgment is successfully resolved such that, in either case, the Final Order and Judgment approving this Agreement is no longer subject to any challenge on direct appeal. |
| Deadline for Popcornopolis to fund the remaining 97% of the Gross Settlement Amount | Within 3 days of the Effective Date |
| Deadline for JND to make all payments | Within 7 days after JND receives |

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

| due under the Settlement | Popcornopolis' funding of the remaining 97% of the Gross Settlement Amount |
| --- | --- |
| Check-cashing deadline | 180 days after issuance |
| Deadline for JND to either distribute uncashed check funds to *cy pres* recipient or redistribute such funds | As soon as practicable after check-cashing deadline |
| Deadline for JND to provide a final accounting declaration adequate to demonstrate full compliance with all duties set forth in the Settlement, including but not limited to tax withholding, payment, and reporting obligations | As soon as practicable following completion of the distribution process |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement as to the Settlement Class and approval of the Settlement Agreement as to the Collective, in accordance with the schedule set forth herein.


Date: May 15, 2020                    Respectfully submitted,


                                      */s/ Carolyn Hunt Cottrell*
                                      Carolyn Hunt Cottrell
                                      Ori Edelstein
                                      Scott L. Gordon
                                      SCHNEIDER WALLACE
                                      COTTRELL KONECKY LLP

                                      Attorneys for Plaintiff and the Putative Class
                                      and Collective

1

## CERTIFICATE OF SERVICE

2         I hereby certify that I caused the foregoing document to be electronically filed

3 with the Clerk of the Court for the United States District Court, Central District of

4 California, by using the Court's CM/ECF system on May 15, 2020. Service will be

5 accomplished on all parties by the Court's CM/ECF system.

6
Dated: May 15, 2020              */s/ Carolyn Hunt Cottrell*
7                                Carolyn Hunt Cottrell

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*