Carolyn Hunt Cottrell (SBN 166977)
ccottrell@schneiderwallace.com
Ori Edelstein (SBN 268145)
oedelstein@schneiderwallace.com
Scott L. Gordon (SBN 319872)
sgordon@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Attorneys for Plaintiff and the Settlement Class
and Collective

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KUNISE LOWE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>POPCORNOPOLIS, LLC and DOES 1-100, inclusive,<br><br>Defendants. | Case No:  2:19-cv-06984-PSG-RAO<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Date: December 14, 2020<br>Time: 1:30 p.m.<br>Courtroom: 6A<br>Judge: Hon. Philip S. Gutierrez<br><br>Date Action Filed: August 12, 2019 |

1  TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF

2  RECORD:

3      NOTICE IS HEREBY GIVEN that on December 14, 2020, at 1:30 p.m., in

4  Courtroom 6A, 350 West 1st Street, 6th Floor, Los Angeles, California 90012-4565,

5  before Hon. Philip S. Gutierrez of the United States District Court, Central District of

6  California, Plaintiff Kunise Lowe, on behalf of herself and all others similarly

7  situated ("Plaintiff"), moves the Court for final approval of the Stipulation and

8  Settlement Agreement (the "Settlement Agreement" or the "Settlement," filed at ECF

9  41-2) as to the Settlement Class and the Collective. The Settlement resolves all of the

10 claims in this action on a class and collective basis. In particular, Plaintiff moves for

11 orders:

12 ***As to the Settlement Class:***

13      (1)    Granting final approval of the Settlement Agreement as to the

14 Settlement Class;

15      (2)    Certifying the Settlement Class for settlement purposes;

16      (3)    Finally appointing and approving Schneider Wallace Cottrell Konecky

17 LLP as Counsel for the Settlement Class;

18      (4)    Finally appointing and approving Plaintiff Kunise Lowe and Settlement

19 Class Member and Collective Member Rachael Stark as Class Representatives for the

20 Settlement Class;

21      (5)    Finally approving payment to JND Legal Administration ("JND") in the

22 amount of $24,000 for its services as Settlement Administrator;

23      (6)    Finally approving the PAGA Settlement Amount; and

24      (7)    Finally approving the following implementation schedule, below.

25 ***As to the Collective:***

26      (1)    Granting final approval of the Settlement Agreement as to the Collective

27 of Opt-In Plaintiffs; and

      (2)    Approving the schedule for completing the settlement process as to the

---

Collective.

*Implementation Schedule*

| Effective Date | The first date after a Final Order and Judgment is entered granting approval to the terms of this Agreement without modification of any terms, with the exceptions set forth in Section V.B of the Settlement, and either of the following events also has occurred: (a) the date upon which the time to appeal the Final Order and Judgment expires with no appeal having been filed; or (b) the date upon which any such appeal of the Final Order and Judgment is successfully resolved such that, in either case, the Final Order and Judgment approving this Agreement is no longer subject to any challenge on direct appeal. |
|---|---|
| Deadline for Popcornopolis to fund the remaining 97% of the Gross Settlement Amount[1] | Within 3 days of the Effective Date |
| Deadline for JND to make all payments due under the Settlement | Within 7 days after JND receives Popcornopolis' funding of the remaining 97% of the Gross Settlement Amount |
| Check-cashing deadline | 180 days after issuance |
| Deadline for JND to either distribute uncashed check funds to *cy pres* recipient or redistribute such funds | As soon as practicable after check-cashing deadline |
| Deadline for JND to provide a final accounting declaration adequate to demonstrate full compliance with all duties set forth in the Settlement, including but not limited to tax withholding, payment, and reporting | As soon as practicable following completion of the distribution process |

[1] Defendant funded 3% of the Gross Settlement Amount, or $15,000, following preliminary approval to cover the Settlement Administrator's costs with respect to notice administration.

| obligations | |
|---|---|

Plaintiff brings this Motion pursuant to Federal Rules of Civil Procedure 23(e). The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Carolyn Hunt Cottrell, the Declaration of JND's Stephen Donaldson, and all other records, pleadings, and papers on file in the action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiff also submits a proposed Final Order and Judgment with her moving papers.

Date: November 13, 2020          Respectfully submitted,


                                 */s/ Carolyn Hunt Cottrell*
                                 Carolyn Hunt Cottrell
                                 Ori Edelstein
                                 Scott L. Gordon
                                 SCHNEIDER WALLACE
                                 COTTRELL KONECKY LLP

                                 Attorneys for Plaintiff and the Settlement
                                 Class and Collective

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................. 1

II.     FACTUAL BACKGROUND .................................................................. 2

III.    PROCEDURAL HISTORY .................................................................... 3

        A.      Plaintiff's Claims ...................................................................... 3

        B.      Discovery ................................................................................... 4

        C.      Mediation ................................................................................... 5

        D.      Preliminary Approval ................................................................ 5

        E.      Notice of Settlement, Response of Class Members, and Opt-In Process ............... 6

        F.      Final Approval of the Settlement .............................................. 8

IV.     TERMS OF THE SETTLEMENT ......................................................... 8

        A.      Basic Terms and Value of the Settlement ................................. 8

        B.      Class and Collective Definitions ............................................. 11

        C.      Allocation and Awards ........................................................... 11

        D.      Scope of Release and Final Judgment ................................... 14

V.      ARGUMENT ...................................................................................... 14

        A.      Ninth Circuit Precedent Favors and Encourages Class Settlements ................... 14

        B.      The Court Should Finally Approve the Settlement ................. 17

                1.      The best practicable notice was provided to the Class Members in accordance with the process approved by the Court ................... 17

                2.      The terms of the Settlement are fair, reasonable, and adequate ................... 18

                3.      The Parties have agreed to distribute settlement proceeds tailored to the Class and Collective and their respective claims ................... 20

                4.      The Parties' informal discovery enabled them to make informed decisions regarding settlement ................... 21

                5.      There are substantial risks in proceeding with the litigation. ................... 22

                6.      The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel. ................... 24

                7.      Class Members approve of the Settlement ................... 24

        C.      The Class Representative Enhancement Payments are Reasonable ................... 25

D.   The Requested Attorneys' Fees and Costs are Reasonable ................................. 25

E.   The Court Should Finally Certify the Settlement Class ....................................... 26

    1.   The Settlement Class Members are numerous and ascertainable. ...............26

    2.   Plaintiff's claims raise common issues of fact or law..................................26

    3.   Plaintiff's claims are typical of the claims of the Class............................27

    4.   Plaintiff and Class Counsel will adequately represent the Class. .................28

    5.   The Rule 23(b)(3) requirements for class certification are also met. ...........28

VI.   CONCLUSION ...................................................................................................... 30

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Amchem Prod., Inc. v. Windsor*
    521 U.S. 591 (1997)......................................................................................30

*Balderas v. Massage Envy Franchising, LLP*
    2014 WL 3610945 (N.D. Cal. July 21, 2014)...........................................19

*Bellinghausen v. Tractor Supply Co.*
    306 F.R.D. 245 (N.D. Cal. 2015)................................................................19

*Boyd v. Bechtel Corp.*
    485 F.Supp. 610 (N.D. Cal. 1979)..............................................................21

*Carter v. Anderson Merchandisers, LP*
    No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010)...........................24

*Churchill Village, L.L.C. v. Gen. Elec.*
    361 F.3d 566 (9th Cir. 2004) ......................................................................17

*Cody v. Hillard*
    88 F.Supp.2d 1049 (D.S.D. 2000) ..............................................................25

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*
    No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016).....15

*Eddings v. Health Net, Inc.*
    No. CV 10-1744-JST RZX, 2013 WL 3013867 (C.D. Cal. June 13, 2013)...........22

*Franklin v. Kaypro Corp.*
    884 F.2d 1222 (9th Cir. 1989) ....................................................................15

*Fry v. Hayt, Hayt & Landau*
    198 F.R.D. 461 (E.D. Pa. 2000)......................................................26, 27, 28

*Grunin v. Int'l House of Pancakes*
    513 F.2d 114 (8th Cir. 1975) ......................................................................18

*Guilbaud v. Sprint Nextel Corp.*

   No. 3:13-CV-04357-VC, 2016 WL 7826649 (N.D. Cal. Apr. 15, 2016) .................................... 16

*Hanlon v. Chrysler Corp.*

   150 F.3d 1011 (9th Cir. 1998) .................................................................... 15, 24, 26, 27

*Holmes v. Continental Can Co.*

   706 F.2d 1144 (11th Cir. 1983) ................................................................................... 21

*Ikonen v. Hartz Mountain Corp.*

   122 F.R.D. 258 (S.D. Cal. 1988) .................................................................................. 26

*In re Am. Bank Note Holographics, Inc.*

   127 F.Supp.2d 418 (S.D.N.Y. 2001) ........................................................................... 24

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation*

   789 F.Supp.2d 935 (N.D. Ill. 2011) ............................................................................ 21

*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*

   289 F.R.D. 526 (N.D. Cal. 2012) ................................................................................. 23

*In re Mego Financial Corp. Sec. Litig.*

   213 F.3d 454 (9th Cir.2000) ........................................................................................ 19

*In re Syncor ERISA Litig.*

   516 F.3d 1095 (9th Cir. 2008) ..................................................................................... 17

*In re Warfarin Sodium Antitrust Litig.*

   212 F.R.D. 231 (D. Del. 2002) .................................................................................... 19

*Kilbourne v. Coca-Cola Co.*

   No. 14CV984-MMA BGS, 2015 WL 5117080 (S.D. Cal. July 29, 2015) .................................... 23

*Lamps Plus, Inc. v. Varela*

   139 S. Ct. 1407 (2019) ................................................................................................ 23

*Langford v. Devitt*

   127 F.R.D. 41 (S.D.N.Y. 1989) ................................................................................... 18

*Lewis v. Starbucks Corp.*

No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ........................21

*Linney v. Cellular Alaska P'ship*

151 F.3d 1234 (9th Cir. 1998) ........................................................................................19

*Lynn's Food Stores, Inc. v. United States*

679 F.2d 1350 (11th Cir. 1982) ......................................................................................15

*Ma v. Covidien Holding, Inc.*

2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ...................................................................19

*Mandujano v. Basic Vegetable Products, Inc.*

541 F.2d 832 (9th Cir. 1976) ....................................................................................18, 24

*Monterrubio v. Best Buy Stores, L.P.*

291 F.R.D. 443 (E.D. Cal. 2013) ...................................................................................22

*O'Connor v. Uber Techs., Inc.*

No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS 157070 (N.D. Cal. Sep. 13, 2019) ...................16

*Officers for Justice v. Civil Serv. Comm'n*

688 F.2d 615 (9th Cir. 1982) ........................................................................16, 17, 19, 25

*Otey v. CrowdFlower, Inc.*

No. 12-CV-05524-JST, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015) .........................15

*Romero v. Producers Dairy Foods, Inc.*

235 F.R.D. 474 (E.D. Cal. 2006) ...................................................................................26

*Soto, et al. v. O.C. Communications, Inc., et al.*

Case No. 3:17-cv-00251-VC, ECF 304-305 (N.D. Cal. Oct. 23, 2019) ........................16

*Staton v. Boeing Co.*

327 F.3d 938 (9th Cir. 2003) ..........................................................................................16

*Stovall-Gusman v. W.W. Granger, Inc.*

2015 WL 3776765 (N.D. Cal. June 17, 2015) ...............................................................19

*Torrisi v. Tucson Elec. Power Co.*

   8 F.3d 1370 (9th Cir. 1993) .................................................................................. 18

*Viceral v. Mistras Grp., Inc.*

   No. 15-cv-02198-EMC, 2017 U.S. Dist. LEXIS 23220 (N.D. Cal. Feb. 17, 2017) ............... 16, 19

*Vikram v. First Student Mgmt., LLC*

   No. 17-CV-04656-KAW, 2019 WL 1084169 (N.D. Cal. Mar. 7, 2019)...................................... 19

*Wang v. Chinese Daily News, Inc.*

   737 F.3d 538 (9th Cir. 2013) ..........................................................................27, 28

*Wren v. RGIS Inventory Specialists*

   No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............................................ 17

*Yokoyama v. Midland Nat. Life Ins. Co.*

   594 F.3d 1087 (9th Cir. 2010) ................................................................................. 29

*York v. Starbucks Corp.*

   No. CV 08-07919 GAF PJWX, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011) ......................... 23

**State Cases**

*7-Eleven Owners for Fair Franchising*

   85 Cal.App.4th 1135 (2000) ................................................................................... 19

*Benton v. Telecom Network Specialists, Inc.*

   220 Cal.App.4th 701 (Cal. Ct. App. 2014) ..................................................................... 29

**Rules**

Fed.R.Civ.P. 23(a) .......................................................................................15, 26, 27, 28

Fed.R.Civ.P. 23(e) ...............................................................................................14, 17

**Other Authorities**

Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*

   § 21.61 (4th ed. 2004) ........................................................................................... 15

## I. INTRODUCTION

Plaintiff seeks final approval of this class and collective action brought on behalf of current and former non-exempt Roadshow Workers for Defendant Popcornopolis, LLC ("Defendant" or "Popcornopolis"). Plaintiff sued for Defendant's alleged violations of federal and California labor laws with respect to these employees, who offer samples of Defendant's products at Costco store locations. After informal discovery and an early mediation, the Parties reached a class- and collective-wide Settlement that provides excellent recoveries for the Settlement Class Members and Opt-In Plaintiffs.

The Court granted preliminary approval of the $500,000 non-reversionary Settlement on July 8, 2020, which resolves the claims of 184 Settlement Class Members and 34 Opt-In Plaintiffs.[2] The net per workweek recovery stands at $72.44 for participating Settlement Class Members and $30.78 for Opt-In Plaintiffs.[3] Thus, a California employee who worked just 14 weeks will receive in excess of $1,000. Overall, the average recovery will exceed $1,211[4] per participating Settlement Class Member and $530 per Opt-In Plaintiff.  These recoveries are particularly robust

---

[2] Settlement Class Members assert California Labor Code claims, while Opt-In Plaintiffs work in other states and assert FLSA claims only. One Settlement Class Member opted out of the Settlement. 34 Opt-In Plaintiffs submitted FLSA opt in forms pursuant to 29 U.S.C. 216(b), out of a total pool of 120 Collective Members. As set forth below, the Opt-In Plaintiffs tended to be longer tenured workers with large recoveries relative to those Collective Members that did not opt in.

[3] The differences in the recoveries reflect that the Settlement Class Members assert and release California Labor Code claims, while Opt-In Plaintiffs assert and release FLSA claims. The California claims provide significant damages for off-the-clock work, meal and rest period violations, and derivative penalties, and lead to much higher recoveries based on the factual predicates at issue.

[4] The average recoveries for Settlement Class Members do not incorporate the additional amounts they will be paid under the Settlement attributable to $26,533 in settlement funds allocated to Collective Members that did not opt in. Under the Settlement, the Collective Members that did not opt in release no claims, and the funds attributable to them are to be distributed to the participating Settlement Class Members. *See* Settlement Agreement, ¶¶ IV.L.2, VI.B.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

considering that a prior class action settlement[5] resolves claims of the Settlement Class Members for a significant portion of the Class Period alleged here, and Defendant executed arbitration agreements with Plaintiff and other employees.

Given the strong recoveries and that the Settlement will provide significant monetary payments in uncertain times, Class Counsel respectfully submits that the Court should approve the Settlement. By any measure, the Settlement provides a great benefit to the Class and Opt-In Plaintiffs and an efficient outcome in the face of expanding litigation. It is fair, reasonable, and adequate in all respects. Accordingly, as set forth herein, the Settlement should be finally approved.

## II. FACTUAL BACKGROUND

Plaintiff, Settlement Class Members, and Opt-In Plaintiffs are current and former similarly situated, hourly, non-exempt Roadshow Workers for Popcornopolis in California and throughout the United States.[6] Cottrell Decl., ¶ 8. Popcornopolis promotes its products via in-store displays at Costco stores, where it provides free samples of its products to the shopping public. *Id.*, ¶ 9.

Plaintiff alleges that Class Members experience wage and hour violations in their work for Popcornopolis. *Id.*, ¶ 10. In particular, Plaintiff alleges that Popcornopolis fails to provide timely, legally complaint meal and rest breaks to the Class Members due to policies and practices requiring Roadshow Workers to remain at the promotional display the entire time that it is open. *Id.*, ¶ 11. Plaintiff also alleges that Class Members experience significant amounts of off-the-clock work, including assembly, set up, disassembly, and removal of the heavy display booths. *Id.* Plaintiff alleges that Popcornopolis requires Roadshow Workers to perform

---

[5] In *Gardner, et al. v. Popcornopolis, LLC* (Los Angeles Superior Court, Case No. BC519857) ("*Gardner*"), the parties settled the wage and hour claims existing for Roadshow workers at issue in this case through December 30, 2016, the date of final approval of that settlement.
[6] Plaintiff, Settlement Class Members, and Opt-In Plaintiffs are sometimes referred to hereafter as "Class Members" or "Roadshow Workers" for ease of reading.

additional off-the-clock work, including answering work-related calls from Popcornopolis employees outside of the scheduled shifts. *Id.* Plaintiff further alleges that California Class Members are not reimbursed for necessary business expenses for some of their mileage in their personal vehicles and work-related usage of personal cellular phones. *Id.*

As a result of these alleged violations, Plaintiff alleges that Defendant systematically violated the Fair Labor Standards Act, as well as California labor law. Throughout the relevant time period, Plaintiff alleges that Defendant eschewed its obligations to Plaintiff and Class Members by (1) not paying Class Members proper wages for work performed off-the-clock on a daily basis; (2) failing to provide Class Members with a reasonable opportunity to take meal and rest periods, and failing to compensate Class Members when such meal and rest periods were not taken; (3) failing to reimburse necessarily-incurred expenses; and (4) failing to issue accurate, itemized wage statements.

Popcornopolis has at all times denied, and continues to deny, all of these allegations, and denies any and all liability for Plaintiff's claims. It further denies that Plaintiff's allegations are appropriate for class, collective, and/or representative treatment for any purpose other than for settlement purposes.

## III.    PROCEDURAL HISTORY

### A.    Plaintiff's Claims

Plaintiff Kunise Lowe filed two separate complaints: an FLSA Collective and Rule 23 Class Action complaint, filed in the instant case on August 12, 2019 (*see* ECF 1), and a Complaint under the California Labor Code Private Attorneys General Act ("PAGA"), filed in Alameda County Superior Court on September 18, 2019 (Case No. HG19035567).[7] The federal Complaint alleges overtime and minimum

---

[7] In the Settlement Agreement, the two cases together are referred to as the "Action." Pursuant to the Settlement, the Parties amended the Complaint here to bring the PAGA claims in this Court, in the interest of efficiency, so that this Court may approve the PAGA allocation in the Settlement. *See*

wage claims under the FLSA on behalf of a nationwide Collective, as well as claims for Popcornopolis' violations of the California Labor Code on behalf of a Rule 23 California Class. The California Class claims include failure to compensate for all hours worked at applicable California minimum wage and overtime rates, failure to provide compliant meal and rest periods, failure to provide accurate, itemized wage statements, failure to timely pay all wages owed during employment and following separation from employment, failure to reimburse for necessary business expenditures, and unfair business practices under Bus. & Prof. Code §§ 17200, *et seq*. The operative federal Complaint now includes PAGA causes of action under California Labor Code § 2699(a) and (f) for civil penalties for violating these California Labor Code provisions. Defendant filed its Answer to the initial Complaint in the instant action on October 18, 2019. ECF 21. Notably, Defendant asserted its Fourth Affirmative Defense that the claims at issue are subject to arbitration. *Id.*

### B. Discovery

The Parties held their Rule 26(f) conference in a series of communications between December 2, 2019, and December 16, 2019. Cottrell Decl., ¶ 12. During these conferences, the Parties discussed potential early mediation, and ultimately agreed to attend early private mediation with renowned mediator Mark S. Rudy on January 10, 2020. *Id.* The Parties apprised the Court of the mediation in their Joint Rule 26(f) Report on December 30, 2019. *See* ECF 29.

As a result of the early mediation, the Parties engaged in extensive informal discovery for the purposes of mediation. Cottrell Decl., ¶ 13. Plaintiff served an informal discovery request on December 6, 2019, which sought the Class and Collective Lists, timekeeping and payroll information, policies and procedures,

---

ECF 47, 48; Settlement Agreement, § III. Pursuant to the Settlement, Plaintiff filed a request for dismissal of the state court PAGA action on July 17, 2020, which that court entered on July 22, 2020. Cottrell Decl., ¶ 21.

1   arbitration agreements, the Named Plaintiff's personnel file, and numerous other

2   documents and data. *Id.*, ¶ 14. Defendant thereafter produced considerable informal

3   discovery, including a list of all Roadshow Workers, which included contact

4   information, timekeeping and payroll data, the manual for Roadshow workers,

5   policies and procedures, and various figures and data points for the Class and

6   Collective. *Id.*, ¶ 15. Class Counsel used this information to perform a detailed

7   investigation of Defendant's timekeeping and payroll policies and practices, which

8   included numerous intake interviews with Class Members and a comprehensive

9   damages analysis. *Id.*, ¶ 16.

10         **C. Mediation**

11         The Parties participated in a full-day mediation with Mark S. Rudy on January

12   10, 2020. *Id.*, ¶ 17. With the assistance of Mr. Rudy, who has vast experience

13   mediating wage and hour disputes, counsel engaged in serious and arm's-length

14   negotiations. *Id.* The case did not settle on the date of the mediation, and negotiations

15   continued through Mr. Rudy. These efforts culminated in the agreement to settle for

16   $500,000 on January 17, 2020. *Id.*, ¶ 18. After the agreement to settle, counsel for the

17   Parties worked to finalize the Settlement and corresponding notice documents,

18   subject to the Court's approval. *Id.*, ¶ 19. Seven drafts and revisions were circulated

19   in order to arrive at the final settlement. *Id.* The Settlement Agreement was fully

20   executed on May 15, 2020.  *Id.*, ¶ 20.

21         **D. Preliminary Approval**

22         Plaintiff filed her preliminary approval motion on May 15, 2020. *See* ECF 41.

23   The Parties also filed a stipulation on that date for leave to file the proposed First

24   Amended Class and Collective Action Complaint ("FAC"), which added the PAGA

25   claims into this action. *See* ECF 42. Thereafter, the Court issued its Order granting

26   Plaintiff's preliminary approval motion on July 8, 2020. ECF 51.

27

### E. Notice of Settlement, Response of Class Members, and Opt-In Process

JND is responsible for distributing the Notices of Settlement; calculating individual settlement payments; calculating all applicable payroll taxes, withholdings and deductions; preparing and issuing all disbursements to be paid to participating Settlement Class Members, Opt-In Plaintiffs, the Class Representatives, Class Counsel, the LWDA, and federal and local tax authorities; and handling inquiries and/or disputes from Roadshow Workers. Cottrell Decl., ¶ 22. JND is also responsible for the timely preparation and filing of all tax returns. *Id*. JND established a case website, www.lowesettlement.com, which provides Settlement documents and information and allows for the submission of electronic inquiries. *Id*., ¶ 23. JND also established a toll-free call center and email address to field questions, address updates, and other inquiries from Class Members. *Id*.

Following the Court's order, JND received the Class and Collective lists from Defendant on July 23, 2020. Cottrell Decl., ¶ 24. The data contained the names, last known mailing addresses, last known personal email addresses, social security numbers, and workweeks for the Class and Collective Members. JND sent the Notices of Settlement to these workers on August 6, 2020 via U.S. Mail, and via email to all email addresses provided.[8] *Id*. Each of the 305 total Class and Collective Members received U.S. Mail notice or email notice, and the vast majority received both. *Id*.

In order to include such information on the Notices, JND first calculated the individual Settlement Payments for every Roadshow Worker using the workweek data provided by Defendant. Cottrell Decl., ¶ 25. The Notices informed the Class and Collective Members of: the Settlement terms; their expected share; the deadline to

---

[8] There were separate versions of Notice of Settlement for Settlement Class Members and for Collective Members. *Id*.

1  submit objections, requests for exclusions, Opt-In Forms, and disputes; the December

2  14, 2020 final approval hearing; and that Plaintiff would seek attorneys' fees, costs,

3  and service awards and the corresponding amounts. *Id.*; *see also* ECF 41-2. JND

4  included the URL for the case website, the toll-free call center number, and the

5  names and contact information for Class Counsel in the Notices of Settlement. *Id.*

6       As of November 5, 2020, 27 hard-copy Notices have been returned to JND as

7  undeliverable without forwarding address. *Id.*, ¶ 26. JND performed skip-tracing and

8  other techniques to identify current addresses, and 22 Notices were successfully re-

9  mailed. *Id.* Just five U.S. Mail Notices remain undelivered; 47 email Notices were

10  undeliverable. *Id.* The deadline for Settlement Class Members to opt out, object, and

11  dispute their reported workweeks expired October 20, 2020. *Id.*, ¶ 27. Additionally,

12  the deadline for Collective Members to opt in and dispute their reported workweeks

13  expired October 20, 2020.[9] *Id.* 34 out of 120 Collective Members opted in to the

14  Settlement and all Opt-In Forms have been filed with the Court.[10] *Id.*; *see also* ECF

15  52-57.

16       To date, with the notice period complete, not a single objection has been filed

17  and just one Class Member has opted out of the Settlement. *Id.*, ¶ 28. Moreover, no

18  Class Members or Opt-In Plaintiffs have disputed the workweek figures reported in

19  their Notices. *Id.* Plaintiff files a declaration from JND regarding notice

20  administration in conjunction with this motion. Following final approval of the

21  Settlement, JND will issue checks to the Class Members. *Id.*, ¶ 29.

22

23

24  [9] As Collective Members were required to opt in, they were not permitted to opt out of or object to
   the Settlement.

25  [10] The Collective Members who opted in had higher average recoveries than those that did not. In

26  particular, the average recovery for Opt-In Plaintiffs is $539.59, while the average recovery for
   Collective Members who did not opt-in was $308.53. As such, the Collective Members who did not

27  participate tended to have smaller recoveries. *Id.*

### F. Final Approval of the Settlement

The Final Approval Hearing is currently scheduled for December 14, 2020. With this Motion, Plaintiff asks the Court to grant final approval of this Settlement as to the Class and Opt-In Plaintiffs. The Court should grant final approval at that time given the substantial recovery realized by all participating Settlement Class Members and Opt-In Plaintiffs, and the globally positive reaction of the Roadshow Workers. Following an order by the Court on this Motion, the Parties and the Settlement Administrator will execute the final steps of the settlement process, including sending individual checks to all participating Roadshow Workers for their individual Settlement Payments.

## IV. TERMS OF THE SETTLEMENT

### A. Basic Terms and Value of the Settlement

Popcornopolis has agreed to pay a non-revisionary Gross Settlement Amount of $500,000 to settle all aspects of the case. *Id.*, ¶ 30. The Net Settlement Amount is defined as the amount that is distributable to the Settlement Class and Opt-In Plaintiffs, and equals the Gross Settlement Amount less Class Counsel Fees (not to exceed $165,000), Class Counsel Costs ($13,186.17), Enhancement Payments (not to exceed $6,500 for Plaintiff Kunise Lowe and $3,500 to Settlement Class Member and opt-in Rachael Stark), Settlement Administration Costs ($24,000)[11], and the PAGA Settlement Amount ($20,000).[12] *Id.* The Parties agree that Settlement Payments for participating Settlement Class Members and Opt-In Plaintiffs will be calculated and

---

[11] The Settlement Administration costs are relatively high, due to the requirement of an opt-in process for the Collective and because the Opt-In Plaintiffs worked in numerous different states. Cottrell Decl., ¶ 31. The Settlement Administrator will be required to complete tax reporting for each separate state where Opt-In Plaintiffs worked. *Id.*

[12] The Parties agreed to allocate $20,000 of the Gross Settlement Amount to the settlement of the PAGA claims. Cottrell Decl., ¶ 32. The Settlement Administrator will pay 75%, or $15,000, of this amount to the LWDA, and 25%, or $5,000, will be distributed to Settlement Class Members. *Id.* Plaintiff submitted the settlement and preliminary approval papers to the LWDA (*see* ECF 49) and requests final approval of the PAGA allocation.

paid from the Net Settlement Amount based on the following allocations: 83% of the Net Settlement Amount is to be allocated for Settlement Payments to participating Settlement Class Members and the remaining 17% of the Net Settlement Amount is available for Settlement Payments to Opt-In Plaintiffs.[13] *Id.*

The Gross Settlement Amount is a negotiated amount that resulted from substantial arms' length negotiations and significant investigation and analysis by Class Counsel. *Id.*, ¶ 33. Class Counsel based their damages analysis and settlement negotiations on the informal discovery, including payroll and timekeeping data. *Id.* Based on the analysis of the documents and data produced by Popcornopolis and interviews with Class Members, Plaintiff made reasonable assumptions regarding the wage and hour violation rates that she could prove on a classwide basis: 50 minutes of off-the-clock work per each shift; an 80% meal period violation rate; a 100% rest period violation rate; $10.00 of unpaid cell phone expenses per pay period; and $23.20 for mileage per shift. *Id.*, ¶ 34.

Using these assumptions and other datapoints derived from the timekeeping and payroll information, and further assuming that Plaintiff and the Class Members would certify all of their claims and prevail at trial, Class Counsel calculated the total potential exposure if Plaintiff prevailed on all of her claims at approximately $1.06 million.[14] *Id.*, ¶ 35. The total amount of damages is broken down as follows:

For the Settlement Class, Plaintiff assesses the unpaid wages damages, meal and rest period damages, and expense reimbursement damages under the California Labor Code at approximately $518,000. *Id.*, ¶ 37. For the Opt-In Plaintiffs, Plaintiff assesses

---

[13] The allocation reflects that (1) there are more Settlement Class Members than Collective Members, and (2) California state law provides for enhanced damages and penalties for wage and hour violations compared to the FLSA.

[14] This analysis excludes Collective Members who did not opt in, in contrast with the figures presented at preliminary approval. Those individuals do not release any claims and are excluded from this assessment of Defendant's exposure.

the unpaid wages damages and expense reimbursement damages under the FLSA at approximately $76,000.[15] *Id.*, ¶ 38. Plaintiff's reasonable assessment for the total value of these substantive claims for the Settlement Class and Opt-In Plaintiffs is approximately $594,000. *Id.*, ¶ 39.

Plaintiff's assesses the total value of California derivative claims (waiting time penalties, wage statements, and PAGA penalties) for the Settlement Class at approximately $470,000. *Id.,* ¶ 40. Totaling these estimated substantive and derivative damages across the Settlement Class and Opt-In Plaintiffs yields the total estimated damages amount for the entire action of approximately $1.06 million. *Id.*

The negotiated non-revisionary Gross Settlement Amount of $500,000 represents more than 84% of the approximately $594,000 that Plaintiff calculated for the core unpaid wages claims, meal and rest break claims, and expense reimbursement claims. *Id.*, ¶ 41. Factoring the derivative claims, the Gross Settlement Amount is more than 47% of the total estimated damages for all claims. *Id.* Again, these figures are based on Plaintiff's assessment of a best-case-scenario. *Id.* To have obtained such a result at trial, Plaintiff would have had to (1) certify all claims and withstand any decertification and arbitration motions; (2) prevail on the merits on all claims; (3) prove that Defendant acted knowingly or in bad faith; and (4) prove that all participating Roadshow Workers experienced the violations at the levels described above for every shift. *Id.*

Class Representatives and Class Counsel considered these significant risks of continued litigation when considering the proposed Settlement. *Id.*, ¶ 42. The Settlement will result in immediate and certain payment to Class Members of excellent recoveries. *Id*., ¶ 43. The average net recovery will exceed $1,211 per

---

[15] For the entire Collective (assuming 100% opt-in rate), Plaintiff had assessed the unpaid wages damages and expense reimbursement damages under the FLSA at approximately $261,000 at preliminary approval. *Id.*

participating Settlement Class Member and $539 per Opt-In Plaintiff. *Id.*, ¶ 43. These
amounts provide significant compensation to the Roadshow Workers, and the
Settlement provides an excellent recovery in the face of expanding and uncertain
litigation. In light of all of the risks, the settlement amount is fair, reasonable, and
adequate. *Id*.

### B. Class and Collective Definitions

Participating Individuals—i.e., Settlement Class Members that do not opt out
and Opt-In Plaintiffs—will share in the proposed Settlement. The Settlement Class
Members[16] include all current and former hourly, non-exempt employees of
Popcornopolis, LLC, who worked for Popcornopolis, LLC as Roadshow Workers[17] in
California during the Class Period. Settlement Agreement, ¶ I.QQ. Opt-In Plaintiffs
are members of the Collective that submitted Opt-In Forms. The Collective is
comprised of all current and former hourly, non-exempt employees of Popcornopolis,
LLC, who worked for Popcornopolis, LLC as Roadshow Workers in the United
States during the Collective Period, except those who worked exclusively in
California. Settlement Agreement, ¶ I.K.

### C. Allocation and Awards

The Net Settlement Amount to be paid to Class Members is approximately
$267,814.[18] Cottrell Decl. at ¶ 45. Participating Settlement Class Members will each
receive a settlement award check without the need to opt-in or submit a claim form.
*Id.*, ¶ 46; Settlement Agreement, § IV.F. Settlement Class Members who wished to be

---

[16] The Settlement Class is to be certified for settlement purposes only under Federal Rule of Civil
Procedure 23.
[17] "Roadshow Workers" are defined as non-exempt, hourly employees of Popcornopolis, LLC,
including those with the job title "Brand Ambassador," Manager in any capacity, and/or Trainer,
whose primary duty is to offer Defendant's product samples at displays at Costco store locations.
Settlement Agreement, ¶ I.NN.
[18] This amount increased slightly from the preliminary approval papers, as Class Counsel's final
costs were lower than the "not to exceed" amount used for the preliminary approval estimates.

1  excluded from the Settlement were able to submit a Request for Exclusion to the

2  Settlement Administrator during the opt-out period.[19] Settlement Agreement, ¶ IV.G.

3      Participating Settlement Class Members will receive a *pro rata* portion of the

4  Class Net Settlement Amount based on their number of workweeks during the Class

5  Period[20] through the Preliminary Approval Date. Settlement Agreement, ¶ IV.L.2.ii.

6  Each participating Settlement Class Member will also receive an equal portion of the

7  Net PAGA Amount. Settlement Agreement, ¶ IV.L.2.iv.

8      Opt-In Plaintiffs will receive the amount stated on their Notices of Settlement,

9  which were calculated as the *pro rata* portion of the Collective Net Settlement

10  Amount based on the number of workweeks the individual worked for Defendant at

11  any time during the Collective Period[21] through the Preliminary Approval Date in

12  proportion to the number of workweeks for all Collective Members.[22] Settlement

13  Agreement, ¶ IV.L.2.iii.

14      Defendant funded three percent (3%) of the Gross Settlement Amount after the

15  Preliminary Approval Date, to provide an advance payment towards settlement

16  administration costs. Cottrell Decl., ¶ 49. Defendant will fund the remaining 97% of

17

18  _____

19  [19] The opt-out deadline and objection deadline, as well as the opt-in deadline and the workweek
dispute deadline, were all set at October 20, 2020, 75 days after dissemination of notice. Only one
Settlement Class Member opted out.

20  [20] "Class Period" means the time period from September 19, 2016 up to and including the date of
entry of the Preliminary Approval Order. Settlement Agreement, ¶ I.I.

21  [21] "Collective Period" means the time period from August 12, 2016 up to and including the date of
entry of the Preliminary Approval Order. Settlement Agreement, ¶ I.M.

22  [22] The Notices of Settlement provided the estimated recovery and number of workweeks for each

23  Settlement Class Member and Collective Member, assuming that no Settlement Class Members opt-
out and that all Collective Members timely submit Opt-In Forms. Opt-In Plaintiffs will not be paid

24  individual Settlement Payments in excess of the amount stated in the Notices of Settlement. On the
other hand, Settlement Class Members will be paid individual Settlement Payments in excess of the

25  amount stated in the Notices of Settlement. In particular, the excess funds from the Collective Net
Settlement Amount attributable to Collective Members who did NOT submit Opt-In Forms will be

26  added to the Class Net Settlement Amount and distributed to participating Settlement Class

27  Members. Settlement Agreement, ¶ IV.L.2.i.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

1  the Gross Settlement Amount within three (3) days after the Effective Date. *Id.* The

2  Settlement Administrator will make all payments due under the Settlement within

3  seven (7) days after the Settlement Administrator receives Defendant's funding of the

4  remaining 97% of the Gross Settlement Amount. Agreement, ¶ IV.N.

5        Any checks remaining uncashed after one hundred and eighty (180) calendar

6  days after being issued shall be void. Settlement Agreement, ¶ IV.N. If the amount of

7  uncashed individual Settlement Payment checks attributable to participating

8  Settlement Class Members exceeds $10,000, then the funds from those checks will be

9  redistributed *pro rata* to those participating Settlement Class Members who timely

10  cash their checks. *Id.* If the amount of uncashed individual Settlement Payment

11  checks for participating Settlement Class Members is equal to or less than $10,000,

12  or if there are uncashed check funds after the redistribution, then the funds from those

13  checks will be distributed to Legal Aid at Work as a *cy pres* beneficiary.[23] *Id.*

14        Likewise, if the amount of uncashed individual Settlement Payment checks

15  attributable to Opt-In Plaintiffs exceeds $5,000, then the funds from those checks will

16  be redistributed *pro rata* to those Opt-In Plaintiffs who timely cash their checks.[24] *Id.*

17  If the amount of uncashed individual Settlement Payment checks for Opt-In Plaintiffs

18  is equal to or less than $5,000, or if there are uncashed check funds after the

19  redistribution, then the funds from those checks will be distributed to Legal Aid at

20  Work as a *cy pres* beneficiary. *Id.*

21

22

23  [23] Legal Aid at Work is a nonprofit organization that provides legal services assisting low-income,
working families and promotes better understanding of the conditions, policies, and institutions that
affect the well-being of workers and their families and communities. Plaintiff provides briefing

24  regarding its suitability as a *cy pres* recipient in the accompanying Motion for Approval of
Attorneys' Fees and Costs, Service Awards, and *Cy Pres* Beneficiary.

25  [24] In the event that the average pro rata redistribution to Opt-In Plaintiffs who timely cash their
checks would exceed $200, then the redistribution will be adjusted so that the average payment to

26  Opt-In Plaintiffs who timely cash their checks is $200, and the excess funds will be added to the

27  uncashed check funds for Settlement Class Members. *Id.*

### D. Scope of Release and Final Judgment

Participating Settlement Class Members will release all claims that were raised in the litigation and all claims that could have been brought based on the facts alleged in the Complaints. Settlement Agreement, ¶ VI.A. In particular, on the Effective Date, all Settlement Class Members who did not submit Requests for Exclusion will fully release Defendant from all claims, rights, demands, liabilities and causes of action under California law and federal law that were pleaded in the litigation and/or that could have been raised based on or arising out of the same factual predicates of the litigation, running through the Preliminary Approval Date.[25] *Id.* Opt-In Plaintiffs will release all claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, that were pleaded in the litigation and/or that could have been raised based on or arising out of the same factual predicates of the litigation, running through the Preliminary Approval Date. Settlement Agreement, ¶ VI.B. Again, Collective Members that did not opt in do not release any claims.

Plaintiff Lowe and Settlement Class Member and opt-in Rachael Stark also agree to a general release from all known and unknown claims they may have against the Released Parties, of every nature or description whatsoever, with the exception of any workers' compensation claim. Settlement Agreement, ¶ VI.C.

### V. ARGUMENT

#### A. Ninth Circuit Precedent Favors and Encourages Class Settlements

A certified class action may not be settled without Court approval. *See* Fed.R.Civ.P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final

---

[25] This release of claims for participating Settlement Class Members extends to their redundant claims for failure to pay for all hours worked and failure to pay minimum and overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq. Id.*

1   settlement approval hearing at which objecting class members may be heard, and at

2   which evidence and argument concerning the fairness, adequacy, and reasonableness

3   of the settlement is presented. Manual for Complex Litigation, *Judicial Role in*

4   *Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision

5   to approve or reject a proposed settlement is committed to the sound discretion of the

6   court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Rule 23

7   requires that all class action settlements satisfy two primary prerequisites before a

8   court may grant certification for purposes of preliminary approval: (1) that the

9   settlement class meets the requirements for class certification if it has not yet been

10  certified; and (2) that the settlement is fair, reasonable, and adequate. Fed.R.Civ.P.

11  23(a), (e)(2); *Hanlon*, 150 F.3d at 1020.

12          In the FLSA context, court approval is required for FLSA collective

13  settlements, but the Ninth Circuit has not established the criteria that a district court

14  must consider in determining whether an FLSA settlement warrants approval. *See,*

15  *e.g., Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016

16  WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey v. CrowdFlower, Inc.*, No. 12-CV-

17  05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015). Most courts in this

18  Circuit, however, evaluate the settlement under the standard established by the

19  Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355

20  (11th Cir. 1982), which requires the settlement to constitute "a fair and reasonable

21  resolution of a bona fide dispute over FLSA provisions." *Otey*, 2015 WL 6091741, at

22  *4.

23          Federal law strongly favors and encourages settlements, especially in class

24  actions. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here

25  is an overriding public interest in settling and quieting litigation. This is particularly

26  true in class action suits."). Moreover, when reviewing a motion for approval of a

27

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court of Appeals will rarely overturn approval of a class action settlement unless "the terms of the agreement contain convincing indications that the incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of the negotiations and that the district court was wrong in concluding otherwise." *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).

Applying this standard of review to other federal and California wage and hour class actions, federal courts in California routinely approve settlements similar to that reached in this case. *See O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS 157070, at *12 (N.D. Cal. Sep. 13, 2019) (granting final approval of a settlement that included both FLSA and California Labor Code claims); *Jones, et al. v. CertifiedSafety, Inc.*, Case No. 3:17-cv-02229-EMC, ECF 232 (N.D. Cal. June 1, 2020) (same); *Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 299, 305 (N.D. Cal. Oct. 23, 2019) (same); *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2017 U.S. Dist. LEXIS 23220, at *2 (N.D. Cal. Feb. 17, 2017) (same); *Guilbaud v. Sprint Nextel Corp.*, No. 3:13-CV-04357-VC, 2016 WL 7826649, at *1 (N.D. Cal. Apr. 15, 2016) (same). Likewise, in its July 8, 2020 order, the Court already granted preliminary approval. *See* ECF 51. This Court also certified the California Class and certified the Collective.[26] *Id.* Accordingly, the only step that

---

[26] Plaintiff acknowledges that, in the event that the Settlement is not approved by the Court, class and collective certification would be contested by Defendant, and Defendant fully reserves and does not waive any arguments and challenges regarding the propriety of class and collective action certification.

remains is final approval of the Settlement, which should be granted pursuant to Ninth Circuit case law and numerous decisions of federal district courts in California.

### B. The Court Should Finally Approve the Settlement

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2); *Officers for Justice*, 688 F.2d at 625. Included in this analysis are considerations of: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the Court should find that the Settlement is fair, reasonable, and adequate, and finally approve it as to the Settlement Class and Opt-In Plaintiffs.

### 1. The best practicable notice was provided to the Class Members in accordance with the process approved by the Court.

Pursuant to the Court's July 8, 2020 preliminary approval order, JND sent the Court-approved Notices of Settlement to the Class and Collective Members in accordance with the terms of the Settlement. Cottrell Decl. ¶ 33. The Notices were sent via U.S. Mail and email, and the Parties created a well-designed case website

1 | where Roadshow Workers can view the Settlement and accompanying court filings.
2 | *Id*. The notice process was robust, and all Class and Collective Members received the
3 | Notice of Settlement in paper or electronic form (with the majority receiving both
4 | forms).

5 | Notice of a class action settlement is adequate where the notice is given in a
6 | "form and manner that does not systematically leave an identifiable group without
7 | notice." *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 835 (9th Cir.
8 | 1976). The notice should be the best "practicable under the circumstances including
9 | individual notice to all members who can be identified through reasonable effort."
10 | *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993). Sending
11 | individual notices to settlement class members' last-known addresses constitutes the
12 | requisite effort. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir.
13 | 1975); *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by
14 | first class mail has been approved repeatedly as sufficient notice of a proposed
15 | settlement.").

16 | The Settlement Administrator followed all of the procedures set forth in the
17 | Court-approved notice plan. Reasonable steps have been taken to ensure that all Class
18 | Members receive the Notice. Ultimately, of the 305 notices distributed via U.S. Mail,
19 | just five notices (1.64%) are undeliverable following skip-tracing and other
20 | techniques. Cottrell Decl. ¶ 35. Moreover, the dissemination of notice via email
21 | increased the likelihood that Class Members successfully received the notice. *Id*. The
22 | Notices provided reasonable estimates of Class Members' recovery. Accordingly, the
23 | notice process was effective and satisfies the "best practicable notice" standard.

**2. The terms of the Settlement are fair, reasonable, and adequate.**

24 |
25 |
26 | In evaluating the fairness of a proposed settlement, courts compare the
27 | settlement amount with the estimated maximum damages recoverable in a successful

1    litigation. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

2    Courts routinely approve settlements that provide a fraction of the maximum

3    potential recovery. *See, e.g.*, *Officers for Justice*, 688 F.2d at 623; *Vikram v. First*

4    *Student Mgmt., LLC*, No. 17-CV-04656-KAW, 2019 WL 1084169, at *5 (N.D. Cal.

5    Mar. 7, 2019) (approving gross settlement amount that represents "30.6% of the

6    California labor law violations and PAGA penalties"); *Ma v. Covidien Holding, Inc.*,

7    2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the

8    action" is within the range of reasonableness).[27] "Even a small percentage of the

9    maximum possible recovery can be a reasonable settlement. Dollar amounts are

10   judged not in comparison with possible recovery in the best of all possible worlds,

11   but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Warfarin*

12   *Sodium Antitrust Litig.*, 212 F.R.D. 231, 258 (D. Del. 2002).

13          Thus, it is well-settled that a proposed settlement is not to be measured against

14   a hypothetical ideal result that might have been achieved. *See, e.g.*, *7-Eleven Owners*

15   *for Fair Franchising*, 85 Cal.App.4th 1135, 1150 (2000) (citing *Linney v. Cellular*

16   *Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) with approval). "Notably, [a

17   court must consider whether] a substantial portion of Defendant's total potential

18   liability exposure would not translate into awards to class members at all. . . . [For

19   example, where] the estimated potential liability is comprised of PAGA penalties, []

20   these large penalties do not necessarily translate into take-home awards for members

21   of the class…." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal.

22   2015).

23

24   [27] *See also Viceral*, 2016 WL 5907869, at *7 (approving wage and hour settlement which
     represented 8.1% of the total verdict value); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL

25   3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of
     reasonableness'"); *Balderas v. Massage Envy Franchising, LLP*, 2014 WL 3610945, at *5 (N.D.

26   Cal. July 21, 2014) (gross settlement amount of 8% of maximum recovery and net settlement
     amount of 5%).

27

A review of the Settlement reveals the fairness, reasonableness, and adequacy of its terms. Cottrell Decl. ¶ 60. The Gross Settlement Amount of $500,000, resulting in a Net Settlement Amount of approximately $267,814, will result in fair and just relief to the Participating Individuals. *Id.* The Gross Settlement Amount represents more than 84% of the approximately $594,000 that Class Counsel have calculated for the core unpaid wage and meal and rest period claims. *Id.* ¶ 61. Moreover, the $500,000 settlement amount represents approximately 47% of Defendant's total potential exposure of $1.06 million. *Id.*

The Settlement provides for a considerable average recovery exceeding $1,211 per each of the 184 participating Settlement Class Members (this amount divides the *net* recovery by total number of participating Class Members), reflecting a $72.44 per workweek value under the Settlement. *Id.* ¶ 62. The largest recovery for a Settlement Class Member will be in excess of $8,246. *Id.* The average recovery is $539 per each of the 34 Opt-In Plaintiffs (this amount divides the *net* recovery by total number of Opt-In Plaintiffs), reflecting a $30.78 per workweek value under the Settlement. *Id.* ¶ 62. The largest recovery for an Opt-In Plaintiff will be $4,247. *Id.* These results are well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation, particularly when considering that the California Class Period is significantly reduced by the prior *Gardner* settlement and that Defendant has arbitration agreements with the Roadshow Workers. The final settlement amount takes into account the substantial risks inherent in any class action wage-and-hour case, as well as the procedural posture of the Action and the specific defenses asserted by Defendant. *Id.* ¶ 64; *See Officers for Justice*, 688 F.2d at 623.

### 3. The Parties have agreed to distribute settlement proceeds tailored to the Class and Collective and their respective claims.

In an effort to ensure fairness, the Parties have agreed to allocate the settlement

proceeds among participating Settlement Class Members and Opt-In Plaintiffs in a manner that recognizes that amount of time that the particular individual worked for Defendant in the applicable limitations period. Cottrell Decl., ¶ 65. The allocation method will ensure that longer-tenured Settlement Class Members and Opt-In Plaintiffs receive a greater recovery than their less-tenured counterparts. *Id.* Moreover, the allocation tracks the differences in substantive law and penalty claims with a heavier allocation for work performed in California. *Id.* The allocation was made based on Class Counsel's assessment to ensure that employees are compensated accordingly and in the most equitable manner. *Id.*

A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D. Ill. 2011). Rather, although disparities in the treatment of class and collective members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d at 979–80, 2011 WL 2204584 at *42. Plaintiff provides rational and legitimate bases for the allocation method here, and the Parties submit that it should be finally approved by the Court.

### 4. The Parties' informal discovery enabled them to make informed decisions regarding settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g., Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and

weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in extensive informal discovery that enabled both sides to assess the claims and potential defenses in this action. Cottrell Decl., ¶¶ 12-16, 66. The Parties were able to accurately assess the legal and factual issues that would arise if the cases proceeded to trial(s). *Id.* In addition, in reaching this Settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class and collective actions. *Id.*, ¶¶ 5-7, 67. Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendant's compensation policies and practices on Class Members' pay. *Id.*, ¶ 68. Ultimately, facilitated by mediator Mark S. Rudy, the Parties used this information and discovery to fairly resolve the litigation. *Id.*, ¶ 69.

### 5. There are substantial risks in proceeding with the litigation.

"Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class." *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *3 (C.D. Cal. June 13, 2013). The monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation. Cottrell Decl., ¶ 70. If the case was to go to trial as a class and collective action, Class Counsel estimates that fees and costs would exceed $2,000,000. *Id.*, ¶ 71. Litigating the class and collective action claims would require substantial additional preparation and discovery. *Id.* It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. *Id.*

Recovery of the damages and penalties previously referenced would also

require complete success and certification of all of Plaintiff's claims, a questionable feat in light of developments in wage and hour and class and collective action law as well as the legal and factual grounds that Defendant has asserted to defend this action. *Id.,* ¶ 72. Off-the-clock claims may pose difficulty to certify for class treatment, given that the nature, cause, and amount of the off-the-clock work may vary based on the individualized circumstances of the worker.[28] While Plaintiff is confident that she would establish that common policies and practices give rise to the off-the-clock work for Roadshow Workers, Plaintiff acknowledges that the work was performed at various different locations around the country. Cottrell Decl., ¶ 73 Moreover, Defendant executed arbitration agreements with Plaintiff Lowe and the Class Members, which, if upheld, would prevent certification of claims in this Action.[29] *Id.*, ¶ 74. With the arbitration agreement, the Roadshow Workers would effectively be limited to individual actions in the arbitral forum. *Id.*

Thus, Plaintiff faces the risk that the Court would decline to certify the Settlement Class and/or Collective for at least some claims. *Id.*, at ¶ 75. Certification of off-the-clock work claims is complicated by the lack of documentary evidence and reliance on employee testimony, and Plaintiff would likely face motions for decertification as the case progressed. *Id.*

In contrast to litigating this suit, resolving this case by means of the Settlement will yield a prompt, certain, and very substantial recovery for the Class Members and Opt-In Plaintiffs. *Id.*, at ¶ 82. Such a result will benefit the Parties and the court system. *Id.* It will bring finality to the Action and will foreclose the possibility of

---

[28] *See, e.g., In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), aff'd, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019); *Kilbourne v. Coca-Cola Co.*, No. 14CV984-MMA BGS, 2015 WL 5117080, at *14 (S.D. Cal. July 29, 2015); *York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011).

[29] *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019).

expanding litigation. *Id.*

### 6. The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel.

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the settlement was a product of non-collusive, arm's-length negotiations. Cottrell Decl., ¶ 77. The Parties participated in a lengthy mediation session before Mark S. Rudy, a skilled mediator with many years of experience mediating employment matters. *Id.* The Parties then spent several weeks discussing settlement and negotiating the settlement agreement, with several rounds of meet and confer and correspondences related to the terms and details of the Settlement. *Id.*, ¶ 78. Plaintiff is represented by experienced and respected litigators of representative wage and hour actions, and these attorneys feel strongly that the proposed Settlement achieves an excellent result for the Class Members and Opt-In Plaintiffs. *Id.*, ¶ 79.

### 7. Class Members approve of the Settlement.

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a factor of great significance. *See Mandujano*, 541 F.2d at 837; *see also In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that

24

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

1  the reaction of the class to the settlement is perhaps the most significant factor to be

2  weighed in considering its adequacy."). Courts have found that a relatively low

3  percentage of objectors or opt outs is a very strong sign of fairness that factors heavily

4  in favor of approval. *See, e.g., Cody v. Hillard*, 88 F.Supp.2d 1049, 1059-60 (D.S.D.

5  2000) (approving the settlement in large part because only 3% of the apparent class

6  had objected to the settlement).

7      No Class Members have objected to the Settlement, and only one Class

8  Member opted out of the Settlement. *See* Cottrell Decl. ¶ 80. In addition, Class

9  Representatives Kunise Lowe and Rachael Stark approve of the terms of the

10  Settlement. *Id.*; *see also* Declarations in Support of Service Awards. This shows

11  widespread support for the Settlement among Class Members, and gives rise to a

12  presumption of fairness.

13      **C. The Class Representative Enhancement Payments are Reasonable**

14      In approving the Settlement, the Court must determine whether "the settlement,

15  taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for

16  Justice*, 688 F.2d at 625. In addition to the terms and details of the Settlement

17  discussed above, the Settlement also establishes service awards of up to $6,500 for

18  Plaintiff Lowe and up to $3,500 for Settlement Class Member and opt-in Rachael

19  Stark. Plaintiff sets forth the arguments in support of the service awards in full in the

20  accompanying Motion for Award of Attorneys' Fees and Costs, Service Awards, and

21  Approval of *Cy Pres* Recipient. Plaintiff does not repeat those arguments here. The

22  Court should grant final approval to the requested service awards as reasonable.

23      **D. The Requested Attorneys' Fees and Costs are Reasonable**

24      Likewise in evaluating the Settlement, the Court should evaluate Plaintiff's

25  request for attorneys' fees and costs pursuant to the terms of the Settlement. In their

26  fee motion, Class counsel will request 33% of the Gross Settlement Amount, or

27  $165,000, plus reimbursement of costs up to $13,186.17. Cottrell Decl., ¶ 30.

Plaintiff sets forth the arguments in support of the fee and costs request in full in the accompanying Motion for Award of Attorneys' Fees and Costs, Service Awards, and Approval of *Cy Pres* Recipient. Plaintiff does not repeat those arguments here. The Court should grant final approval to the requested fees and costs as reasonable.

### E. The Court Should Finally Certify the Settlement Class[30]

In its July 8, 2020 preliminary approval order, the Court granted certification of the provisional California Class. ECF 51. Now that notice has been effectuated, the Court should finally certify the Settlement Class in its Final Order and Judgment. The Settlement Class meets all of the requirements for final approval as set forth below.

### 1. The Settlement Class Members are numerous and ascertainable.

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed.R.Civ.P. 23(a)(1). While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). There are 184 participating Settlement Class Members, who have been identified and issued notice, easily satisfying numerosity and ascertainability. Cottrell Decl., ¶ 81.

### 2. Plaintiff's claims raise common issues of fact or law.

The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Rule 23(a)(2) has been construed permissively. *Hanlon*, 150 F.3d at 1019. Plaintiff "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese*

---

[30] The Court has already certified the Collective. *See* ECF 51, n. 2. To the extent necessary, the Court should finally certify the Collective as to the Opt-In Plaintiffs.

1  *Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common

2  question" can satisfy the commonality requirement of Rule 23(a)(2). *Id.*

3        Plaintiff contends that common questions of law and fact predominate here,

4  satisfying paragraphs (a)(2) and (b)(3) of Rule 23, as alleged in the operative

5  complaint. Cottrell Decl., ¶ 82. Defendant has uniform policies applicable to all

6  Roadshow Workers. *Id.*, ¶ 83. Specifically, Plaintiff alleges that Roadshow Workers

7  all perform essentially the same job duties— assembling and arranging the displays,

8  interacting with members of the public, distributing free samples to shoppers,

9  promoting Popcornopolis' products, and dismantling the display, pursuant to

10  Defendant's standards and requirements. *Id.* Plaintiff alleges that the wage and hour

11  violations are borne of the standardized policies, practices, and procedures that

12  Popcornopolis imposes, creating pervasive issues of fact and law that are amenable to

13  resolution on a class-wide basis. *Id.* In particular, Roadshow Workers are subject to

14  the same: hiring and training process; timekeeping, payroll, and compensation

15  policies; meal and rest period policies and practices; and reimbursement policies. *Id.*

16  Plaintiff's other derivative claims will rise or fall with the primary claims. *Id.*

17  Because these questions can be resolved at the same juncture, Plaintiff contends the

18  commonality requirement is satisfied for the Settlement Class. *Id.*

19          **3.  Plaintiff's claims are typical of the claims of the Class.**

20      "Rule 23(a)(3) requires that the claims of the named parties be typical of the

21  claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's

22  permissive standards, a representative's claims are 'typical' if they are reasonably

23  coextensive with those of absent class members; they need not be substantially

24  identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiff contend that her claims are

25  typical of those of all other Class Members. Cottrell Decl., ¶ 85. She was subject to

26  the alleged illegal policies and practices that form the basis of the claims asserted in

27  this case. *Id.* Interviews with Class Members and review of timekeeping and payroll

data confirm that the employees throughout the United States were subjected to the same alleged illegal policies and practices to which Plaintiff was subjected. *Id.*, ¶ 86. Thus, Plaintiff contends that the typicality requirement is also satisfied. *Id.*

### 4. Plaintiff and Class Counsel will adequately represent the Class.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiff's claims are in line with the claims of the Settlement Class, and Plaintiff's claims are not antagonistic to the claims of Class Members. Cottrell Decl., ¶ 87. Plaintiff has prosecuted this case with the interests of the Class Members in mind. *Id.* Moreover, Class Counsel has extensive experience in class action and employment litigation, including wage and hour class actions, and does not have any conflict with the Class. *Id., ¶¶* 5-7, 88.

### 5. The Rule 23(b)(3) requirements for class certification are also met.

Under Rule 23(b)(3), Plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang,* 737 F.3d at 545.

Here, Plaintiff contends the common questions raised in this action predominate over any individualized questions concerning the Settlement Class. Cottrell Decl., ¶ 89. The Settlement Class is entirely cohesive because resolution of

1   Plaintiff's claims hinge on the uniform policies and practices of Defendant, rather

2   than the treatment the Class Members experienced on an individual level. *Id.* As a

3   result, Plaintiff contends that the resolution of these alleged class claims would be

4   achieved through the use of common forms of proof, such as Defendant's uniform

5   policies, and would not require inquiries specific to individual Class Members.[31] *Id.*

6        Further, Plaintiff contends the class action mechanism is a superior method of

7   adjudication compared to a multitude of individual suits. *Id.*, ¶ 90. To determine

8   whether the class approach is superior, courts are to consider: (A) the class members'

9   interests in individually controlling the prosecution or defense of separate actions;

10  (B) the extent and nature of any litigation concerning the controversy already begun

11  by or against class members; (C) the desirability or undesirability of concentrating

12  the litigation of the claims in the particular forum; and (D) the likely difficulties in

13  managing a class action. Fed.R.Civ.P. 23(b)(3)(A)-(D).

14       Here, the Class Members do not have a strong interest in controlling their

15  individual claims. Cottrell Decl., ¶ 91. The Action involves several workers with very

16  similar, but relatively small, claims for monetary injury. *Id*. If the Class Members

17  proceeded on their claims as individuals, their many individual suits would require

18  duplicative discovery and duplicative litigation, and each Class Member would have

19  to personally participate in the litigation effort to an extent that would never be

20  required in a class proceeding. *Id.* Thus, Plaintiff contends that the class action

21  mechanism would efficiently resolve numerous substantially identical claims at the

22  same time while avoiding a waste of judicial resources and eliminating the possibility

23

24  [31] Although the amount of time worked off-the-clock and number of missed meal and rest periods

25  may vary, these are damages questions and should not impact class certification. *Yokoyama v. Midland Nat. Life Ins. Co*., 594 F.3d 1087, 1094 (9th Cir. 2010). The fact that individual inquiry

26  might be necessary to determine whether individual employees were able to take breaks despite the Defendant's allegedly unlawful policy is not a proper basis for denying certification. *Benton v.*

27  *Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701 (Cal. Ct. App. 2014).

1   of conflicting decisions from repetitious litigation and arbitrations. *Id.*

2       The issues raised by the present case are much better handled collectively by

3   way of a settlement. *Id.*, ¶ 92. Manageability is not a concern in the settlement

4   context. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement

5   presented by the Parties provides finality, ensures that workers receive redress for

6   their relatively modest claims, and avoids clogging the legal system with numerous

7   cases. Cottrell Decl., ¶ 93. Accordingly, class treatment is efficient and warranted,

8   and the Court should conditionally certify the Settlement Class for settlement

9   purposes. *Id.*

10  **VI.    CONCLUSION**

11      For the foregoing reasons, Plaintiff respectfully requests that the Court grant

12  final approval of the Settlement Agreement and enter the accompanying proposed

13  Final Order and Judgment.

14

15  Date: November 13, 2020                  Respectfully submitted,

16

17                                           */s/ Carolyn Hunt Cottrell*
                                             Carolyn Hunt Cottrell
18                                           Ori Edelstein
                                             Scott L. Gordon
19                                           SCHNEIDER WALLACE
                                             COTTRELL KONECKY LLP
20

21                                           Attorneys for Plaintiff and the Settlement
                                             Class and Collective
22

23

24

25

26

27

---

30

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court, Central District of California, by using the Court's CM/ECF system on November 13, 2020. Service will be accomplished on all parties by the Court's CM/ECF system.

Dated: November 13, 2020        */s/ Carolyn Hunt Cottrell*
                                Carolyn Hunt Cottrell

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Kunise Lowe v. Popcornopolis, LLC, et al.*