UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

JS-6

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (In Chambers):**      **The Court GRANTS Plaintiff's motion for final approval and GRANTS IN SUBSTANTIAL PART Plaintiff's motion for attorneys' fees and an incentive award**

Before the Court are two motions filed by Plaintiff Kunise Lowe ("Plaintiff"): (1) a motion for final approval of class and collective action settlement, *see generally Motion for Final Approval*, Dkt. # 58 ("*Final Approval Mot.*"); and (2) a motion for attorneys' fees and costs, incentive awards, and approval of the *cy pres* recipient, *see generally Motion for Attorneys' Fees*, Dkt. # 59 ("*Fees Mot.*"). Defendant Popcornopolis, LLC ("Defendant") does not oppose. The Court conducted a fairness hearing on December 14, 2020. Having considered the submissions, the Court **GRANTS** Plaintiff's motion for final approval and **GRANTS IN SUBSTANTIAL PART** Plaintiff's motion for attorneys' fees, costs, and incentive awards.

I.    Background

On August 12, 2019, Plaintiff initiated this putative wage and hour class action by filing a complaint in this Court. *See generally Complaint*, Dkt. # 1 ("*Compl.*"). Plaintiff alleged causes of action for (1) failure to pay overtime and minimum wage under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, as well as claims under the California Labor Code, (2) failure to compensate for all hours worked at the applicable California minimum wage and overtime rates, (3) failure to provide compliant meal and rest periods, failure to provide timely and compliant itemized wage statements, (4) failure to timely pay all wages owed during employment and following separation from employment, (5) failure to reimburse for necessary business expenditures, and (6) unfair business practices under Cal. Bus. & Prof. Code §§ 17200, *et seq. See generally Compl.*

Plaintiff also filed a complaint in the Alameda County Superior Court, asserting a claim under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2699. *See Order*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

*Granting Preliminary Approval of Class and Collective Action*, Dkt. # 51 ("*Prelim. Approval Order*"), at 1 n.1. After filing the motion for preliminary approval, Plaintiff filed a First Amended Complaint ("FAC") in this Court to assert the PAGA claim here. *See generally First Amended Complaint*, Dkt # 48 ("*FAC*"). The PAGA claim is part of the parties' settlement. *See Prelim. Approval Order* at 1 n.1.

On January 10, 2020, the parties engaged in private mediation before Mark S. Rudy. *See Declaration of Carolyn H. Cottrell*, Dkt. # 41-1 ("*Cottrell Decl.*"), ¶ 12. In preparation, the parties conducted extensive informal discovery, which included the exchange of payroll information, timesheets, Defendant's employee manuals, and interviews with prospective class members. *See id.* ¶¶ 13–16. The mediation included discussion and examination of the parties' respective positions on the legal and factual issues raised. *See id.* ¶ 18. After arm's-length negotiations during the mediation, the parties agreed to a settlement ("Settlement Agreement") on January 17, 2020. *See id.*

The settlement class (the "Class" or "Class Members") is defined as "all current and former hourly, non-exempt employees of Popcornopolis, LLC, who worked for Popcornopolis, LLC as Roadshow Workers in California during the Class Period." *See Settlement Agreement*, Dkt. # 41-2 ("*Settlement*"), ¶ I.QQ. "Class Period" means the time period from September 19, 2016, up to and including the date of entry of the Preliminary Approval Order, *see id.* ¶ I.I, which was entered on July 8, 2020, *see generally Prelim. Approval Order*.

Plaintiff also sought to certify an FLSA collective ("Collective" or "Collective Members") that consists of "all current and former hourly, non-exempt employees of Popcornopolis, LLC, who worked for Popcornopolis, LLC as Roadshow Workers in the United States during the Collective Period, except those who worked exclusively in California." *Id.* at 2 (quoting *Settlement* ¶ I.K). "Collective Period" means the time period from August 12, 2016, up to and including the date of entry of the Preliminary Approval Order. *Settlement* ¶ I.M.

Plaintiff then moved for preliminary approval of the proposed settlement. *Prelim. Approval Order* at 2. Plaintiff asked the court to (1) grant preliminary approval of the Settlement Agreement; (2) conditionally certify the proposed Class and Collective for settlement purposes; (3) appoint Plaintiff as Class Representative; (4) appoint Plaintiff's counsel as Class Counsel; (5) schedule a hearing date for final approval of the settlement and entry of judgment; (6) appoint JND Legal Administration as the Settlement Administrator; and (7) approve the proposed notice, opt-out form for the Class Members, and opt-in form for the Collective Members. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

The Court granted Plaintiff's motion. *Id.* at 17. The Court (1) granted preliminary approval of the Settlement Agreement, *see id.*; (2) certified the Class for settlement purposes under Rule 23, and certified the Collective, *see id.* at 7 & n.2; (3) appointed Plaintiff as Class Representative, *see id.* at 7; (4) appointed Schneider Wallace Cottrell Konecky LLP as Class Counsel, *see id.*; (5) scheduled a final approval hearing for December 14, 2020, *see id.* at 17; (6) appointed JND as the Settlement Administrator, *see id.*; and (7) approved the proposed Class Notice and Collective Action Opt-In Form, *see id.*

The Court also ordered Plaintiff to file, in addition to the motion for final approval of class action settlement, three memoranda. *Id.*

First, the Court ordered Plaintiff to file a memorandum justifying Class Counsel's award of attorneys' fees and costs that included declarations supporting the reasonableness of each attorney's requested hourly rate, itemized billing statements showing hours worked, hourly rates, expenses incurred thus far, and expenses to be incurred in the future. *Id.* The Court instructed Plaintiff to explain in detail why an upward departure from the benchmark percentage rate was warranted. *Id.* The Court also ordered Plaintiff to explain whether a multiplier should be applied to the lodestar value for the attorneys' fees and, if so, why the proposed multiplier was appropriate in this case. *Id.*

Second, the Court instructed Plaintiff to file a memorandum justifying Plaintiff Lowe's and Opt-In Plaintiff Rachael Stark's service awards with respect to the Gross Settlement Amount and the Individual Settlement Payments to Class Members, as well as declarations from Plaintiff and Stark supporting such awards. *Id.*

Third, the Court ordered Plaintiff to file a memorandum addressing whether any conflict of interest exists between either Class Counsel or Defendant's counsel or the named Plaintiff or Defendant and the *cy pres* recipient. The Court instructed Plaintiff to explain how the parties came to choose the *cy pres* recipient and whether any party or Plaintiff's or Defendant's counsel or any party's family has any preexisting relationship to the organization. *Id.* at 18.[1]

Plaintiff now moves—unopposed—for (1) final approval of the Settlement Agreement, (2) an order awarding attorneys' fees and costs and service awards, and (3) approval of the *cy pres* recipient. *See generally Final Approval Mot.*; *Fees Mot.*

---

[1] While Plaintiff did not file separate memoranda addressing these issues, she included the requested information in her motions and their supporting declarations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

Specifically, regarding the settlement class, Plaintiff moves for an order (1) granting "final approval of the Settlement Agreement as to the Settlement class; (2) certifying the Settlement Class for settlement purposes;" (3) finally "appointing and approving Schneider Wallace Cottrell Konecky LLP as Counsel for the Settlement class;" (4) finally "appointing and approving Plaintiff Kunise Lowe and Settlement Class Member and Collective Member Rachael Stark as Class Representatives for the Settlement Class;" (5) finally "approving payment to JND Legal Administration ("JND") in the amount of $24,000 for its services as Settlement Administrator;" (6) finally "approving the PAGA Settlement Amount;" and (7) finally approving the implementation schedule. *Final Approval Mot.* 2:13–24.

Regarding the Collective, Plaintiff moves for an order "(1) [g]ranting final approval of the Settlement Agreement as to the Collective of Opt-In Plaintiffs; and (2) [a]pproving the schedule for completing the settlement process as to the Collective." *Id.* 2:26–3:1.

Finally, Plaintiff requests approval of $165,000 in attorneys' fees, $13,186.17 of costs, and service awards of $6,500 for Plaintiff Lowe and $3,500 for Opt-In Plaintiff Stark. *Fees Mot.* 2:3–14.

II.   Final Approval of the Settlement Agreement

A.   Overview of Settlement Agreement

The Settlement Agreement provides for a non-reversionary Gross Settlement Amount of $500,000. *Final Approval Mot.* 18:13–14. Of this amount, Class Counsel is entitled to fees of no more than $165,000 and costs of $13,186.17. *Id.* 18:15–18. Plaintiff Kunise Lowe and Rachael Stark are entitled to service awards of no more than $6,500 and $3,500, respectively. *Id.* 18:17–19. The Settlement Administrator is entitled to costs of $24,000. *Id.* 18:19. Finally, $20,000 has been allocated to the PAGA claims, of which $15,000 will go to the Labor and Workforce Development Agency and $5,000 will go to Settlement Class Members. *Id.* 18:19–20 & n.12. Therefore, the Net Settlement Amount is approximately $267,814. *Id.* 21:17–19.

Eighty-three percent of the Net Settlement Amount will go to Settlement Class Members and the remaining seventeen percent will go to Opt-In Plaintiffs. *Id.* 19:1–4. "Th[is] allocation reflects that (1) there are more Settlement Class Members than Collective Members, and (2) California state law provides for enhanced damages and penalties for wage and hour violations compared to the FLSA." *Id.* 19:4 n.13.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

The parties agreed on the Gross Settlement Amount for the following reasons. First, "Class Counsel calculated the total potential exposure if Plaintiff prevailed on all of her claims at approximately $1.06 million." *Id.* 19:15–19. This number reflects (1) $518,000 in damages under the California Labor Code for the Settlement Class, (2) $76,000 in damages under the FLSA for the Opt-In Plaintiffs, and (3) $470,000 for Plaintiff's derivative California-law claims for the Settlement Class. *Id.* 19:20–20:9. Second, Plaintiff considered the risks of continued litigation, such as having to "(1) certify all claims and withstand any decertification and arbitration motions; (2) prevail on the merits on all claims; (3) prove that Defendant acted knowingly or in bad faith; and (4) prove that all participating Roadshow Workers experienced the violations at the levels described [] for every shift." *Id.* 20:16–20. Therefore, Plaintiff deemed reasonable a Gross Settlement Amount of more than 47 percent of the total potential recovery. *Id.* 20:13–24.

Regarding distribution of settlement funds, "[p]articipating Settlement Class Members will receive a *pro rata* portion of the Class Net Settlement Amount based on their numbers of workweeks during the Class Period through the Preliminary Approval Date," and "Opt-In Plaintiffs will receive the *pro rata* portion of the Collective Net Settlement Amount based on the number of workweeks the individual worked . . . in proportion to the number of workweeks for all Collective Members" during the Collective Period through the Preliminary Approval Date. *Id.* 22:3–13. As a result, under the Settlement Agreement, the average net recovery (1) for each participating Settlement Class Member is $1,211, and (2) for each Opt-In Plaintiff is $539. *Id.* 20:24–21:1.

### B.   Legal Standard

A court may finally approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Approval or rejection of a settlement agreement is committed to the district court's sound discretion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In determining whether a settlement is fair, reasonable and adequate, the court must "balance a number of factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement." *Id.*; *see also Staton v. Boeing Co.*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").[2]

The district court must approve or reject the settlement, as a whole, after comprehensively exploring all factors. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify or rewrite particular provisions of the settlement. *See id.* The district court is cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

C.    Discussion

        i.    *Strength of Plaintiff's case*

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (C.D. Cal. 2010) (internal quotation marks omitted). This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Plaintiff does not specifically address this factor. Accordingly, the Court finds that it weighs slightly against granting final approval.

---

[2] The recent amendments to Rule 23(e)(2) instruct district courts to consider whether: the class representatives and class counsel have adequately represented the class; the proposal was negotiated at arm's length; the relief provided for the class is adequate; and the proposal treats Class Members equitably relative to each other. However, recognizing that each circuit has developed its own vocabulary to express these concerns, the Advisory Committee explained that it did not intend to "displace any factor [used by different circuits], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 amendment. Accordingly, the Court applies the Rule 23(e)(2) factors through the lens of the Ninth Circuit's *Hanlon/Staton* factors and existing relevant precedent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

  *ii.  Risk, expense, complexity, and duration of further litigation*

  The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement. *See Officers for Justice*, 688 F.2d at 625.

  Plaintiff argues that "[t]he monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation." *Final Approval Mot.* 32:17–19.

  Regarding expenses, Class Counsel estimates that trial fees and costs would exceed $2,000,000, including for "substantial additional preparation and discovery," such as "depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports." *Id.* 32:19–25.

  Regarding risks, Plaintiff notes that recovery of full damages and penalties would "require complete success and certification of all of Plaintiff's claims, a questionable feat" because off-the-clock claims are "difficult[] to certify for class treatment, given that the nature, cause, and amount of the off-the-clock work may vary based on the individualized circumstances of the worker," and this case involves off-the-clock workers from throughout the country. *Id.* 33:1–9. Additionally, Plaintiff and various Class Members are potentially subject to arbitration agreements, "which, if upheld, would prevent certification of claims in this Action." *Id.* 33:10–13. Accordingly, Plaintiff asserts that the Class and Collective would likely face difficult motions for decertification throughout the action. *Id.* 33:14–18.

  The Court agrees with Plaintiff. Because the Settlement Agreement eliminates the delay, costs, and uncertainty that further litigation would create, this factor supports approval. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

  *iii.  Risk of maintaining class action status through trial*

  Although the Court has preliminarily certified the class, the certification was for settlement purposes only. *See Prelim. Approval Order* at 7. Under Federal Rule of Civil Procedure 23(c)(1)(C), an "order that grants or denies class certification may be altered or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

amended before the final judgment." Because Defendant would have contested class and collective certification through trial, *see Final Approval Mot.* 26:24 n.26, and for the reasons explained in the previous subsection, this factor favors final approval of the Settlement Agreement.

> iv.    *Amount offered in settlement*

The fourth factor in assessing the fairness of the proposed settlement is the amount of the settlement. "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (cleaned up). The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation.

Here, the parties agreed to settle all claims for a total sum of $500,000. *See Final Approval Mot.* 18:12–14. The parties reached this settlement after engaging in adversarial and arm's-length mediation. *See id.* 34:4–21. The Court considered the parties' respective opinions regarding the value and merits of this case during the preliminary approval stage and continues to find that this amount is appropriate in light of the challenges described above. *See Brown v. CVS Pharmacy, Inc.*, No. CV 15-7631 PSG (PJWx), 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) (approving settlement that represented 27 percent of possible recovery); *Glass v. UBS Fin. Servs., Inc.*, CV 06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving an overtime wage settlement that represented 25 to 35 percent of the estimated damages).

Given the risks of ongoing litigation and the substantial recovery for the Class and Collective, the amount offered in settlement is reasonable. *See Aarons v. BMW of N. Amer., LLC*, No. CV 11–7667 PSG (CWx), 2014 WL 4090564, at *11 (C.D. Cal. Apr. 29, 2014) (noting that while settlements will not make most class members completely whole, class members will "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation"); *Vasquez*, 266 F.R.D. at 489 (noting that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" is a relevant factor). Accordingly, this factor favors final approval of the Settlement Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

    *v.     Extent of discovery completed and stage of the proceedings*

    This factor requires the Court to gauge whether Plaintiff had sufficient information to make an informed decision about the merits of her case. *See In re Mego,* 213 F.3d 454, 459 (9th Cir. 2000). The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC,* No. C 02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks omitted).

    Here, the parties have engaged in extensive informal discovery, which included exchanging timekeeping and payroll information, policies and procedures, arbitration agreements, personnel files, interviews with prospective Class Members, and a comprehensive damages analysis. *See Final Approval Mot.* 14:21–15:9. This informal discovery enabled the parties to argue and assess their respective positions during mediation. *Id.* 32:3–6. Accordingly, the Court is confident that Plaintiff had enough information to make an informed decision about the settlement, after arm's-length negotiation and mediation, based on the strengths and weaknesses of the case. *See Glass v. UBS Fin. Servs., Inc.*, CV 06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (reasoning that the parties' having undertaken informal discovery prior to settling supports approving the class action settlement). As such, this factor weighs in favor of granting final approval of the Settlement Agreement.

    *vi.     Experience and views of counsel*

    "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). While counsel's views are instructive, they do not entitle the plaintiff to a presumption of fairness. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). Here, Class Counsel has extensive experience handling employment class action cases. *See Final Approval Mot.* 34:13–21; *Second Declaration of Carolyn Hunt Cottrell*, Dkt. # 58-1 ("*Cottrell Decl. II*"), ¶¶ 5–7, 67, 79. The Court is satisfied that this experience has assisted Class Counsel in evaluating the merits of the claims and risks associated with prosecuting them through trial and appeal. The Court accordingly credits Counsel's determination that the settlement is fair and reasonable and finds that this factor weighs slightly in favor of final approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|----------|------------------------|------|-------------------|

| Title | Kunise Lowe v. Popcornopolis LLC, et al. |
|-------|--------------------------------------------|

      vii.    *Presence of a government participant*

      Because there is no government entity directly participating in the case, this factor is not relevant to the analysis.

      viii.    *Class Members' reaction to the proposed settlement*

      In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement.  *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *see also Arnold v. Fitflop USA, LLC*, No. CV 11-0973 W (KSCx), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

      Here, no Class Members have objected to the Settlement Agreement and one Class Member opted out.  *Final Approval Mot.* 25:7–8.  However, Plaintiff does not directly address how the Court should view the fact that only 34 out of 120 Collective Members opted-in to the Settlement.  Plaintiff justifies this low number by stating that "[t]he Collective Members who opted in had higher [potential] average recoveries than those that did not."  *Id.* at 17:14 n.10.  But Plaintiff does not argue the overall impact that this should have on this factor, nor does she cite any supporting caselaw.  Accordingly, the Court finds that this factor is neutral—Class Members have reacted overwhelmingly positively, but it is unclear whether Collective Members share this feeling.

      ix.    *Balancing the factors*

      On balance, the Court finds that final approval of the Settlement Agreement is appropriate.  A majority of the factors favor approval, and the Court is satisfied that the disparity between Class and Collective members' recoveries and reactions to the Settlement are based on rational, legitimate considerations—namely, that "(1) there are more Settlement Class Members [184] than Collective Members [120 potential members], and (2) California state law provides for enhanced damages and penalties for wage and hour violations compared to the FLSA."  *Final Approval Mot.* 19:4 n.13; *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983) ("The inference of unfairness may be rebutted by a factual showing that the higher allocations to certain parties are rationally based on legitimate considerations."); *In re AT & T*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
| --- | --- | --- | --- |
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

*Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 979 (N.D. Ill. 2011) (same).

Accordingly, the Court **GRANTS** Plaintiff's motion for final approval of the Class and Collective Action Settlement.  Moreover, to the extent the Court has not already done so, the Court **CERTIFIES** the Class and Collective for settlement purposes.  *See Prelim. Approval Order* at 7 & n.2.

III.   Attorneys' Fees, Costs, and Incentive Award

Plaintiff moves for (1) an award of attorneys' fees in the total amount of $165,000 for Class Counsel, (2) reimbursement of $13,186.17 in costs incurred by Class Counsel, and (3) a $6,500 incentive award for Plaintiff and a $3,500 incentive award for Opt-In Plaintiff Rachael Stark.  *Fees Mot.* 8:2–12, 9:20–22.  Plaintiff also seeks final approval of Legal Aid at Work ("LAAW") as the *cy pres* recipient under the Settlement Agreement.  *Id.* 10:4–10.

A.   Attorneys' Fees

i.   Legal Standard

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that after a class has been certified, the Court may award reasonable attorneys' fees and nontaxable costs.  The Court "must carefully assess" the reasonableness of the fee award.  *See Staton*, 327 F.3d at 963; *see also Browne v. Am. Honda Motor Co., Inc.*, No. CV 09-6750 MMM (DTB), 2010 WL 9499073, at *3–5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement).

Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the percentage-of-recovery method or the lodestar method.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944–45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|----------|------------------------|------|-------------------|
| Title    | Kunise Lowe v. Popcornopolis LLC, et al. | | |

ii. *Discussion*

Under the percentage-of-recovery method, courts typically use 25 percent of the fund as a benchmark for a reasonable fee award. *See id.* at 942. The percentage can vary, however, and courts have awarded more or less than 25 percent of the fund in attorneys' fees as they deemed appropriate. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that courts generally award between 20 and 30 percent of the common fund in attorneys' fees).

Here, Plaintiff requests that the Court approve a fee award of $165,000—i.e., one-third of the Gross Settlement Amount. *Fees Mot.* 8:6–8. Because Plaintiff asks the Court to depart from the "benchmark" of 25 percent, the Court must evaluate each of the five factors set out in *Vizcaino. See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). "The mere fact that the defendant agrees to pay the fees 'does not detract from the need to carefully scrutinize the fee award.'" *Zubia v. Shamrock Foods Co.*, No. CV 16-3128 AB (AGRx), 2017 WL 10541431, at *5 (C.D. Cal. Dec. 21, 2017). As such, the Court will analyze this request under the *Vizcaino* factors and cross-check the reasonableness of the award using the lodestar method.

a. *Percentage of the common fund method*

When assessing fee awards' reasonableness under the common fund method, courts consider "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (citing *Vizcaino*, 290 F.3d at 1048–50).

1. *Results achieved*

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Id.* In this case, the Settlement Agreement provides Plaintiff with more than 47 percent of the total estimated potential recovery. *See Cottrell Decl. II* ¶ 41. The average individual settlement share is $1,217 for Class members and $530 for Opt-In Plaintiffs. *See Third Declaration of Carolyn Hunt Cottrell*, Dkt. # 59-1 ("*Cottrell Decl. III*"), ¶ 20. This extraordinary result weighs in favor of an upward departure from the Ninth Circuit's 25 percent benchmark. *See Carlin v. DairyAm., Inc.*, 380 F. Supp. 3d 998, 1022 (E.D. Cal. 2019) (collecting cases in which an upward departure was granted because the settlement amount represented more than 30 percent of potential damages).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

### 2. Risk of litigation

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048 (discussing that "[r]isk is a relevant circumstance" in determining an attorney fee award in a common fund case). The Court agrees that Class Counsel would have faced substantial obstacles on the issues of certification/decertification and arbitration, as discussed above. *See Fees Mot.* 16:17–18. The Court finds that these risks support a slight upward departure from the 25 percent benchmark.

### 3. Skills required and quality of work

The Court also considers the skills required to prosecute and manage this litigation, as well as Class Counsel's overall performance. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047. As discussed elsewhere, Class Counsel conducted informal discovery and successfully negotiated a settlement after mediation despite Defendant's potential defenses, particularly related to arbitration agreements. Therefore, the skill displayed by Class Counsel weighs slightly in favor of an upward departure from the 25 percent benchmark.

### 4. Contingent nature and Plaintiff's financial burden

Class Counsel "undertook all the risk of this litigation on a completely contingent fee basis, expending time and incurring expenses with the understanding that there was no guarantee of compensation or reimbursement. *Fees Mot.* 18:10–18. Because they have faced the risk of walking away with nothing after investing more than 300 hours of work in this matter, *see id.* 21:5, the Court finds that this factor favors an upward departure.

### 5. Awards made in similar cases

The award in this settlement is consistent with awards in similar cases. *See, e.g.*, *Brown v. CVS Pharmacy, Inc.*, No. CV 15-7631 PSG (PJWx), 2017 WL 3494297, at *6–*7 (C.D. Cal. Apr. 24, 2017) (awarding 30 percent of the common fund in attorneys' fees in a wage and hour class action settlement); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-4149 MMM (SH), 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (awarding 34 percent of the common fund in attorneys' fees in a wage and hour class action settlement); *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV 11-1802 PSG (PLAx), 2015 WL 9664959, at *12 (C.D. Cal. Aug. 4, 2015) (approving attorneys' fees of 30 percent of the settlement fund); *Garcia v. Gordon*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

*Trucking, Inc.*, No. CV 10-0324 AWI (SKO), 2012 WL 5364575, at *10 (E.D. Cal. Oct. 31, 2012) (approving fees in the amount of 33 percent of the common fund); *Knight v. Red Door Salons, Inc.*, No. 08-1520 SC, 2009 WL 248367, at *17 (N.D. Cal. Feb. 2, 2009) ("[N]early all common fund awards range around 30%"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010) (citing to wage and hour cases where courts approved awards ranging from 30 to 33 percent); *Singer v. Beckton Dickinson and Co.*, No. 08-CV-821 IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving an attorneys' fee award of 33.33 percent). Accordingly, this factor supports an upward departure from the 25 percent benchmark.

> 6.    *Balancing the factors*

Because all of the factors support an upward departure from the 25 percent benchmark, the Court finds that Class Counsel's request for one-third of the Settlement Amount is reasonable. However, the Court will cross-check the reasonableness of the award using the lodestar method.

> b.    *Lodestar method*

To calculate the "lodestar," the court multiplies the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). The court may raise or lower the lodestar based on several factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1007 n.7 (9th Cir. 2002).

Class Counsel state that the lodestar amount is $224,869, which is based on 349.05 hours billed. *See Fees Mot.* 21:4–6. In support, they submitted timekeeping statements from the

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

attorneys and paralegals who worked on the case, *see Cottrell Decl. III* ¶ 35 & Ex. A, as follows:

| Name | Position | Hours | Rate | Fees |
|---|---|---|---|---|
| Carolyn Cottrell | Partner | 28.40 | $925 | $26,270.00 |
| Travis Close | Of Counsel / Associate | 8.20 | $680 | $5,576.00 |
| Christopher Craig | Of Counsel / Associate | 1.65 | $680 | $1,122.00 |
| Ori Edelstein | Of Counsel / Associate | 56.60 | $800 | $45,280.00 |
| Ian Forgie | Of Counsel / Associate | 52.20 | $600 | $31,320.00 |
| Scott Gordon | Of Counsel / Associate | 113.30 | $680 | $77,044.00 |
| Kristabel Sandoval | Of Counsel / Associate | 29.80 | $680 | $20,264.00 |
| Kenneesha Johnson | Of Counsel / Associate | 0.10 | $680 | $68.00 |
| Thomas Barnett | Law Clerk/Paralegal | 0.60 | $350 | $210.00 |
| Lourdes Castro | Law Clerk/Paralegal | 12.10 | $250 | $3,025.00 |
| Linda Currid | Law Clerk/Paralegal | 3.10 | $300 | $930.00 |
| Lisa Guthrie | Law Clerk/Paralegal | 1.20 | $300 | $360.00 |
| Sarah King-Cash | Law Clerk/Paralegal | 1.70 | $300 | $510.00 |
| Tracey McClain | Law Clerk/Paralegal | 6.80 | $400 | $2,720.00 |
| Jennifer Perez | Law Clerk/Paralegal | 0.10 | $300 | $30.00 |
| Sarah Price | Law Clerk/Paralegal | 10.00 | $325 | $3,250.00 |
| Tyler Smith | Law Clerk/Paralegal | 9.40 | $300 | $2,820.00 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | | Date | December 15, 2020 |
|---|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | | |

| Emma Sturdevant | Law Clerk/Paralegal | 0.70 | $200 | $140.00 |
|---|---|---|---|---|
| Carlyn Williams | Law Clerk/Paralegal | 11.70 | $300 | $3,510.00 |
| Kelle Winter | Law Clerk/Paralegal | 0.90 | $300 | $270.00 |
| Onyebuchi Okeke | Law Clerk/Paralegal | 0.50 | $300 | $150.00 |
| **Total** | | **349.05** | | **$224,869** |

### 1. Rates

The reasonable hourly rate is the rate prevailing in the community for similar work.  *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is based on the prevailing market rates in the relevant community."); *Viveros v. Donahue*, No. CV 10-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal. Mar. 27, 2013) ("The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services.").  The relevant community is the community in which the court sits.  *See Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).  If an applicant fails to meet its burden, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community.  *See, e.g.*, *Viveros*, 2013 WL 1224848, at *2; *Ashendorf & Assocs. v. SMI-Hyundai Corp.*, No. CV 11-02398 ODW (PLAx), 2011 WL 3021533, at *3 (C.D. Cal. July 21, 2011); *Bademyan v. Receivable Mgmt. Servs. Corp.*, No. CV 08-00519 MMM (RZx), 2009 WL 605789, at *5 (C.D. Cal. Mar. 9, 2009).

Here, Class Counsel charge rates of between $200 and $925 for all work performed.  *See Cottrell Decl. III Ex. A.*  The Court turns to the *2018 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* ("Real Rate Report") as a useful guidepost to assess the reasonableness of these hourly rates in the Central District.  *See Eksouzian v. Albanese*, No. CV 13-728 PSG (AJWx), 2015 WL 12765585, at *4–5 (C.D. Cal. Oct. 23, 2015).  The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than eighty companies.  *See Hicks v. Toys 'R' Us-Del., Inc.*, No. CV 13-1302 DSF JCG, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014).  Courts have found that the Real Rate Report is "a much better reflection of true

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

market rates than self-reported rates in all practice areas." *Id.*; *see also Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same).

The 2018 Real Rate Report offers several relevant data points for fees in the Central District. In Los Angeles, partners working in the Employment and Labor field have hourly rates ranging from $456 to $716, and associates' rates range from $345 and $540. *See Real Rate Report* at 76. In addition, paralegals in the labor and employment practice area earn an average hourly rate between $105 and $260. *See id.* at 11–12. Thus, Class Counsel's requested rates are higher than their counterparts in the Los Angeles legal community. As such, the Court adjusts the rates as follows: $716 for Cottrell; $540 for Edelstein, Close, Forgie, Craig, Gordon, Sandoval, and Johnson; and $260 for Barnett, Currid, Guthrie, King-Cash, McClain, Perez, Price, Smith, Williams, Winter, and Okeke.

## 2. *Hours*

An attorney's fee award should include compensation for all hours reasonably expended prosecuting the matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).

Here, Class Counsel have spent 349.05 hours on this litigation over the course of the past fifteen months. *See Cottrell Decl. III* ¶ 8. As discussed at length above, Counsel investigated the claims thoroughly, conducted informal discovery, participated in mediation, and ultimately negotiated a favorable settlement. *See Fees Mot.* 10:12–12:3. Considering the duration and scope of this case, the Court finds that the 349.05-hour figure is reasonable.

## 3. *Lodestar Cross-Check*

The Court recalculates Class Counsel's lodestar as follows:

| Name | Position | Hours | Original Rate | Adjusted Rate | Original Fees | Adjusted Feess |
|---|---|---|---|---|---|---|
| Carolyn Cottrell | Partner | 28.40 | $925 | $716 | $26,270.00 | $20,334.40 |
| Travis Close | Of Counsel / | 8.20 | $680 | $540 | $5,576.00 | $4,428.00 |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-6984 PSG (RAOx) | | Date | December 15, 2020 |
|---|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | | |

| | Associate | | | | | |
|---|---|---|---|---|---|---|
| Christopher Craig | Of Counsel / Associate | 1.65 | $680 | $540 | $1,122.00 | $891.00 |
| Ori Edelstein | Of Counsel / Associate | 56.60 | $800 | $540 | $45,280.00 | $30,564.00 |
| Ian Forgie | Of Counsel / Associate | 52.20 | $600 | $540 | $31,320.00 | $28,188.00 |
| Scott Gordon | Of Counsel / Associate | 113.30 | $680 | $540 | $77,044.00 | $61,182.00 |
| Kristabel Sandoval | Of Counsel / Associate | 29.80 | $680 | $540 | $20,264.00 | $16,092.00 |
| Kenneesha Johnson | Of Counsel / Associate | 0.10 | $680 | $540 | $68.00 | $54.00 |
| Thomas Barnett | Law Clerk/Paralegal | 0.60 | $350 | $260 | $210.00 | $156.00 |
| Lourdes Castro | Law Clerk/Paralegal | 12.10 | $250 | $250 | $3,025.00 | $3,025.00 |
| Linda Currid | Law Clerk/Paralegal | 3.10 | $300 | $260 | $930.00 | $806.00 |
| Lisa Guthrie | Law Clerk/Paralegal | 1.20 | $300 | $260 | $360.00 | $312.00 |
| Sarah King-Cash | Law Clerk/Paralegal | 1.70 | $300 | $260 | $510.00 | $442.00 |
| Tracey McClain | Law Clerk/Paralegal | 6.80 | $400 | $260 | $2,720.00 | $1,768.00 |
| Jennifer Perez | Law Clerk/Paralegal | 0.10 | $300 | $260 | $30.00 | $26.00 |
| Sarah Price | Law Clerk/Paralegal | 10.00 | $325 | $260 | $3,250.00 | $2,600.00 |
| Tyler Smith | Law Clerk/Paralegal | 9.40 | $300 | $260 | $2,820.00 | $2,444.00 |
| Emma Sturdevant | Law Clerk/Paralegal | 0.70 | $200 | $200 | $140.00 | $140.00 |
| Carlyn Williams | Law Clerk/Paralegal | 11.70 | $300 | $260 | $3,510.00 | $3,042.00 |
| Kelle Winter | Law Clerk/Paralegal | 0.90 | $300 | $260 | $270.00 | $234.00 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | | | | Date | December 15, 2020 | |
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Onyebuchi Okeke | Law Clerk/Paralegal | 0.50 | $300 | $260 | | $150.00 | $130.00 |
| **Total** | | **349.05** | | | | **$224,869** | **$178,858.40** |

After assessing the reasonableness of Class Counsel's rates and hours, the Court accepts the adjusted lodestar calculation of $178,858.40. This is more than the requested award of $165,000, meaning that the multiplier in this case would be less than one. Courts have found that awards which represent multipliers less than one are reasonable. *See, e.g.*, *Taylor v. TIC–The Indus. Co.*, No. EDCV 16-186 VAP (SPx), 2018 WL 6131198, at *10 (C.D. Cal. Aug. 1, 2018) (finding a 0.5 multiplier reasonable); *Lopez v. Areotek, Inc.*, No. SACV 14-803 CJC (JCGx), 2018 WL 5099488, at *5 (C.D. Cal. Jan. 8, 2018) (finding a 0.57 multiplier reasonable); *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186 VAP (SPx), 2017 WL 10434013, at *8 (C.D. Cal. Oct. 12, 2017) (finding a 0.8 multiplier reasonable).

Accordingly, given the Court's consideration of the relevant factors set forth by the Ninth Circuit and the lodestar cross-check, the Court finds that a fee award of one-third of the Settlement Amount is reasonable, and the Court **GRANTS** Plaintiff's motion for attorneys' fees.

B.    Litigation Costs

In class action settlements, "[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1048. Here, Class Counsel request reimbursement of expenses incurred in the amount of $13,186.17. *See Fees Mot.* at 21:16–17. This includes expenses for, among other things, (1) legal research, (2) filing documents, and (3) mediation. *Cottrell Decl. III* ¶ 52 & Ex. B. As Class Counsel notes, these costs are normally paid by clients. *Fees Mot.* 21:22–22:1. The Court has reviewed the accounting records and is satisfied that the costs are reasonable. The Court also notes that no Class Member has objected to the requested costs. *Cottrell Decl. III* ¶ 53.

Therefore, the Court **GRANTS** the request for costs in the total amount of $13,186.17.

C.    Incentive Award

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). When considering requests for incentive awards, courts consider five principal factors:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|----------|----------------------|------|-------------------|
| Title    | Kunise Lowe v. Popcornopolis LLC, et al. | | |

(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Further, courts typically examine the propriety of an incentive award by comparing it to the total amount other class members will receive. *See Staton*, 327 F.3d at 975.

Here, Plaintiff requests incentive awards of $6,500 for Plaintiff Lowe and $3,500 for Class Member and Opt-In Plaintiff Rachael Stark. *See Fees Mot.* 22:19–23. In aggregate, these awards represent two percent of the total Settlement.

Plaintiff asserts that she and Stark "expended substantial time assisting in the prosecution of the claims," including by "providing information to counsel, assisting in the drafting of pleadings and other documents, and regularly discussing the facts and proceedings with Class Counsel." *Id.* 23:6–10. And although Stark was not a named plaintiff, she (1) was the first employee to contact Class Counsel, (2) encouraged others to do so, and (3) "provided an extensive amount of information at both the pleading and mediation stages." *Id.* 23:11–14. Additionally, Lowe and Stark took reputational risks "by publicly affiliating themselves with litigation against their employer." *Id.* 23:21–24:4.

The Court concludes that Lowe's award, which represents approximately 5.5 times the average recovery for Class Members, is not so disproportionate as to require the Court's intervention. However, Stark's award, which, even though she is not a named Plaintiff, represents approximately 6.5 times the average recovery for Opt-In Plaintiffs, warrants adjustment. Accordingly, the Court finds that $2,500 for Stark, amounting to roughly 4.7 times the average Opt-In recovery, is appropriate. These awards adequately compensate Lowe and Stark for their service in this suit without being excessive. Accordingly, the Court **GRANTS IN SUBSTANTIAL PART** Plaintiff's request for incentive awards as follows: $6,500 for Lowe and $2,500 for Stark.

D.    Settlement Administration Amount

Plaintiff proposes to pay JND $24,000 for administering the Settlement. *See Final Approval Mot.* 2:21–22. This request is reasonable given the complicated opt-in process, which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

had to be executed throughout numerous states, and the costs and expenses associated with administering the notices and distributing the awards to the claimants. *See Gundersen v. Lennar Assocs. Mgmt., LLC*, No. CV-09-02270-CRB, 2011 WL 13250651, at *2 (N.D. Cal. Oct. 25, 2011) (approving a $25,000 claims administrator fee).

    E.    *Cy Pres*

Under the Settlement Agreement, a maximum of $10,000 in Class Funds and $5,000 in Collective Funds will be disbursed *cy pres* to LAAW. *Fees Mot.* 25:15–16. The Ninth Circuit requires all such *cy pres* distributions to (1) address the objectives of the underlying statutes; (2) target the plaintiff class; and (3) provide reasonable certainty that any member will be benefitted. *Naschin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011).

LAAW is a nonprofit legal services organization that "provides direct legal services in employment law for low-wage workers in California, including in wage and hour actions." *Fees Mot.* 26:4–6. As such, the Court finds that the *cy pres* distribution to LAAW meets the Ninth Circuit's standard because LAAW advocates for the types of workers involved in this dispute and, therefore, Class and Collective Members may indirectly benefit from its efforts.

Separately, in its preliminary order approving the class settlement, the Court ordered Plaintiff to brief whether any conflicts of interest with LAAW exist. *See Prelim. Approval Order* at 18. In response, Class Counsel acknowledges that "Joshua Konecky, a partner at SWCK, is on the Board of Directors At LAAW." *Fees Mot.* 26:1 n.19. Plaintiff argues that LAAW is nonetheless appropriate as a *cy pres* beneficiary because (1) sixty other attorneys also serve on LAAW's board, (2) Konecky was not involved in this action, and (3) none of the attorneys involved "have a significant connection or relationship with LAAW." *Id.* Although a different *cy pres* recipient likely would be more appropriate here, the Court is satisfied that no substantial conflicts exist.

IV.    <u>Conclusion</u>

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for final approval of class action and collective settlement and **GRANTS IN SUBSTANTIAL PART** Plaintiff's request for an award of attorneys' fees, costs, and incentive awards. Accordingly, it is **HEREBY ORDERED AS FOLLOWS:**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-6984 PSG (RAOx) | Date | December 15, 2020 |
|---|---|---|---|
| Title | Kunise Lowe v. Popcornopolis LLC, et al. | | |

- The Court approves settlement of the action between Plaintiff and Defendant, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate.  The parties are directed to perform their settlement in accordance with the terms set forth in the Settlement Agreement.

- Class Counsel are awarded $165,000 in attorneys' fees and $13,186.17 in costs. Additionally, Plaintiff Lowe is awarded a $6,500 incentive award, and Opt-In Plaintiff Stark is awarded a $2,500 incentive award.  The Court finds that these amounts are warranted and reasonable for the reasons stated in this Order.

- The Court approves payment in the amount of $24,000 to JND for settlement administration costs.

- Without affecting the finality of this judgment in any way, this Court hereby retains exclusive jurisdiction over Defendant and the Settlement Class Members for all matters relating to the litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this order.

This order closes the case.

**IT IS SO ORDERED.**